**B. SIEGEL COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 80–1557.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 17, 1981.

Decided Jan. 28, 1982.

Timothy K. Carroll, Dykema, Gossett, Spencer, Goodnow, & Trigg, Detroit, Mich., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., James Callear, Bernard Gottfried, Director Region 7, N.L.R.B., Detroit, Mich., for respondent.

Before MERRITT and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

The B. Siegel Company petitions for review of a National Labor Relations Board order directing it to bargain with the Retail Store Employees' Union, Local 876, United Food and Commercial Workers International Union, AFL–CIO–CLC.[1] The NLRB cross-petitions for enforcement of its bargaining order and bargaining unit certification. The principal issues before us concern the appropriateness of the bargaining unit certified by the NLRB, and accordingly, whether B. Siegel's refusal to bargain with its employee certified representative violates sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq.

The company operates seven retail women's apparel shops in Detroit, Michigan. In June and July of 1979, the union filed three election petitions with the Board, asking for separate elections at the company's Dearborn, Livernois, and Woodward Avenue stores. The petitions called for three distinct bargaining units, consisting of all full- and part-time employees at each store. The company opposed the petitions, contending that an appropriate bargaining unit must include all seven stores and the company's central office. After a hearing and a refusal to reconsider, the Board approved the single-store bargaining units and directed three elections. The union won these elections, and the company has refused to bargain with the certified union.

The company now appeals, contending that the Board abused its discretion by certifying three separate bargaining units. The company argues that the Board disregarded facts which compel recognition of a company-wide bargaining unit. First, the company points to the geographic proximity of its stores. All seven stores and the central office are within an eighteen-mile radius. Second, the company's organizational structure is highly centralized. Management at the central office controls all aspects of merchandising, shipping and receiving, credit and accounting, advertising, data processing, and personnel and employee benefits throughout the network of stores. All supplies are purchased and distributed centrally. Each store must report to the central office daily. Representatives visit each store frequently, often unannounced.

Third, authority over matters of personnel and labor relations rests exclusively with Mr. Levine, the company's Personnel Director. He controls the number of employees in each store, while the Controller establishes the maximum number of man-hours permitted. Individual store managers have no authority to hire personnel: hiring is the concern of the central office only. Similarly, no store manager has the authority to fire an employee. Although a store manager may suggest initial wage rates, the central office ultimately decides the wage each new employee will receive. All raises or salary adjustments are subject to Mr. Levine's review and approval. New employees are first trained by Levine's staff. Finally, the central office establishes all fringe benefits, which apply uniformly to all stores.

Fourth, the company relies on a history of employee transfers from store to store. Company records indicate that 32 current employees have transferred from one store to another at least once. The company frequently transfers employees between stores temporarily, for special sales, holidays, and inventory compilation.

■ The selection of an appropriate bargaining unit lies largely within the Board's discretion. Our review is limited to the question whether the Board's determination was arbitrary or capricious. It is not our responsibility to determine whether the Board certified the best bargaining unit

1. The Board's opinion is found at 250 N.L.R.B. No. 112.

possible. *The Union Savings and Trust Co. v. N.L.R.B.*, 643 F.2d 1249 (6th Cir. 1981); *Meijer, Inc. v. N.L.R.B.*, 564 F.2d 737 (6th Cir. 1977). However, in *Wayne Oakland Bank v. N.L.R.B.*, 462 F.2d 666 (6th Cir. 1972), we recognized that we would not hesitate to disapprove a single store bargaining unit in a retail context if the evidence showed centralized control over the principal aspects of operations and employee relations.

■ In our view, the evidence supports the NLRB's findings that the separate stores are sufficiently autonomous to comprise individual bargaining units. The store managers are more closely involved in employees' daily work than are central office personnel. The manager schedules working hours, and handles schedule complaints. The manager enforces all company rules and policies, and reports infractions. The local manager also evaluates employees and recommends wage increases and promotions. The record convinces us that store managers have discretion to act unilaterally in areas of daily importance to employees.

Reviewing the facts as the Board did, we conclude that substantial evidence supports its findings. The company has no history of collective bargaining, and no other union seeks broader representation. On this basis, we find *N.L.R.B. v. Chicago Health & Tennis Clubs, Inc.*, 567 F.2d 331 (7th Cir. 1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978), distinguishable. The Board did not abuse its discretion by concluding that separate stores are appropriate bargaining units.

The company has admitted that it refused to bargain with the union. It therefore violated sections 8(a)(5) and (1) of the Act. We find no merit in the other contentions raised. Accordingly, we grant enforcement of the Board's order in full.