**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**AMERICAN SEAWAY FOODS,
INC., Respondent.**

No. 81–1543.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 18, 1983.

Decided March 16, 1983.

Elliott Moore, Deputy Associate Gen. Counsel, Jolane Findley, N.L.R.B., Washington, D.C., for petitioner.

Andrew C. Meyer, Duvin, Flinker & Cahn, Cleveland, Ohio, for respondent.

Before KENNEDY, CONTIE and WELLFORD, Circuit Judges.

PER CURIAM.

The National Labor Relations Board (Board) has applied for enforcement of an order finding that American Seaway Foods, Inc., (Seaway) has violated section 8(a)(1) and (5) of the National Labor Relations Act by refusing to bargain with the Office and Professional Employees International Union, Local 17. Seaway has refused to bargain in order to contest the appropriateness of the bargaining unit approved by both the Regional Director and the Board. We enforce the Board's order.

Seaway is engaged in the wholesale distribution of food and grocery products from its principal facility in Bedford Heights, Ohio. The facility, a single building covering approximately 800,000 square feet, houses the company's corporate headquarters and central warehouse. Seaway employs 112 clerical workers, some of whom work in the main office and some of whom function in offices scattered throughout the warehouse. The main office clericals work in areas such as personnel, payroll, purchasing, sales, data processing, receptionist and switchboard operations. The warehouse clericals work in the transportation, receiving, will call, Stations 1 and 3, food service, freezer, print shop and health and beauty aids departments.

On January 24, 1980, the Union filed a representation petition, seeking certification as the exclusive bargaining representative of Seaway's warehouse clerical workers. Seaway objected on the ground that no appropriate bargaining unit could exclude the main office clericals. After a hearing on February 14, 1980, the Regional Director ordered an election in the following bargaining unit:

All plant clerical employees employed by the Employer at its Bedford Heights, Ohio facility, including freezer clerks, transportation clerks, collection and will call clerks, receiving office clerks, food service warehouse clerks and Station 1 and Station 3 clerks, but excluding all office clerical employees, confidential employees, managerial employees, and all professional employees, guards and supervisors as defined in the Act, and all other employees.

Thus the main office clerical employees were excluded from the bargaining unit. For reasons not made clear in the record, the print shop and health and beauty aids clericals, who worked in warehouse offices, also were excluded.[1]

Seaway asked the Board to review the Regional Director's decision because the unit was inappropriate and because the Regional Director had permitted the Union to amend its bargaining unit description at the beginning of the hearing.[2] The Board re-

1. The print shop employees had been excluded in a previous decision by the hearing officer. The health and beauty aids clericals may have been excluded because they were assigned to the sales department. All other sales department clericals worked in the main office.

2. The Union had originally requested that "all Clerical-Typists and so forth employed at the warehouse" comprise the bargaining unit. The hearing officer allowed the proposed unit description to be amended to read:

All plant clerical employees employed at the Employer's warehouse facilities, specifically those employed in the freezer department; transportation department; collection and will call department; receiving department designated in Building 2; food service warehouse clerks; Station 1 and 3 clerks.

fused to review the case because Seaway's request raised no substantial issues. At the subsequent election, the Union prevailed by a vote of 41 to 5 with 3 challenged ballots.

Since April 7, 1980, Seaway has refused to bargain in order to obtain review of the bargaining unit decision. On November 17, 1980, the Board issued an opinion and order stating both that Seaway's arguments had been addressed during the certification proceeding and that the refusal to bargain violated section 8(a)(1) and (5) of the Act. The Board therefore granted the General Counsel's motion for summary judgment. The Board now seeks enforcement.

■ Since selecting an appropriate bargaining unit lies within the Board's discretion "whose decision, if not final, is rarely to be disturbed," *South Prairie Construction Co. v. Local 627, International Union of Operating Engineers*, 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976), this court's review of such a decision is "exceedingly narrow." *North American Soccer League v. NLRB*, 613 F.2d 1379, 1383 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 128 (1980). The Board's determination should be upheld unless it is arbitrary, unreasonable or an abuse of discretion. *See Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947); *Wyandotte Savings Bank v. NLRB*, 682 F.2d 119, 120 (6th Cir. 1982); *B. Siegel Co. v. NLRB*, 670 F.2d 64, 65 (6th Cir.1982); *L.M. Berry & Co. v. NLRB*, 668 F.2d 249, 251 (6th Cir.1982); *Meijer, Inc. v. NLRB*, 564 F.2d 737, 743 (6th Cir.1977). While the Board's discretion is not unlimited, *see Kalamazoo Paper Box Corp.*, 136 NLRB 134, 137 (1962), it need select only an appropriate bargaining unit rather than the most appropriate unit. *See, e.g., NLRB v. Fuelgas Co., Inc.*, 674 F.2d

529 (6th Cir.1982); *Michigan Hospital Service Corp. v. NLRB*, 472 F.2d 293, 294 (6th Cir.1972).

■ We hold that the Board's determination that the warehouse clericals constituted an appropriate separate bargaining unit was not arbitrary, unreasonable or an abuse of discretion. The hearing officer's decision referred to the warehouse clerical employees as being "plant clericals." Clerical workers who perform duties in close association with the production process are "plant clericals." *See Gordonsville Industries, Inc.*, 252 NLRB 563, 590 (1980). Since the hearing officer, as affirmed by both the Regional Director and the Board, found that Seaway's warehouse clericals performed duties which were closely related to the warehouse operations, the use of the term "plant clericals" was not error.

■ The Board's long-standing policy is that absent agreement between the parties, office and plant clerical employees are not to be joined in the same bargaining unit. *See, e.g., The Kroger Co.*, 204 NLRB 1055 (1973); *Fisher Controls Co.*, 192 NLRB 514, 515 (1971); *Weyerhauser Co.*, 173 NLRB 1170, 1171 (1968); *The Rudolph Wurlitzer Co.*, 117 NLRB 6 (1957). This policy is grounded upon the fact that office and plant clericals generally do not share the "community of interests" necessary for employees who are to be joined in one unit. *Mosler Safe Co.*, 188 NLRB 650 (1971). Under the facts of this case, we see no reason to reject the Board's policy, which serves as a guide in defining appropriate bargaining units.

■ This conclusion is supported by a direct application of the community of interests test. Several factors are relevant in deciding whether two groups of employees share a "community of interests sufficient

---

The Union also asked that all office clericals, guards, supervisors, managerial and confidential employees be excluded.

Seaway contends that by permitting the amendment, the hearing officer prejudiced the company's ability to present its case. We disagree. A hearing officer has discretion to permit a bargaining unit description to be amended even at the hearing itself. 29 C.F.R. § 101.-

18(a). Secondly, the amended description did not alter the unit's composition but merely described it in greater detail. Both descriptions limited the scope of the representation petition to warehouse clerical workers. Upon consideration of the entire record, we conclude that allowing the amendment did not prejudice the company.

to justify their mutual inclusion in a single bargaining unit:"

1. Similarity in skills, interests, duties, and working conditions;

2. Functional integration of the plant, including interchange and contact among the employees; . . .

3. The employer's organizational and supervisory structure;

. . . .

5. Bargaining history; and

6. The extent of union organization among the employees.

*Pacific Southwest Airlines v. NLRB,* 587 F.2d 1032, 1038 (9th Cir.1978).[3]

█ The hearing officer did find that Seaway's office and plant clericals share similar skills, working conditions, pay and fringe benefits. The company argues that this point not only helps to demonstrate a community of interests between the two groups, but also tends to show that the results of future negotiations between the warehouse clericals and management will as a practical matter affect the salaries and working conditions of non-union clericals. *See Pacific Southwest Airlines, supra* at 1045; *NLRB v. Harry T. Campbell Sons' Corp.,* 407 F.2d 969, 978–79 (4th Cir.1969).

*Pacific Southwest Airlines* is distinguishable on this point, however, because that case involved a plant clerical unit which was to be added to an existing production and maintenance unit. Such is not the case here. Moreover, in the paragraph immediately following the one in which the ninth circuit raised the possibility that a contract negotiated by a plant clerical unit might as a practical matter affect office personnel, the court stated that a separate unit of plant clericals would have been appropriate. *Id.* at 1045. Finally, it must be noted that although this first point may support Seaway's position, this factor is not by itself

dispositive. *See The Rudolph Wurlitzer Co., supra* at 7.

The hearing officer also found that the plant clericals aid in the performance of actual warehousing duties whereas the office clericals do not. For example, the plant clericals both help other employees to locate merchandise and assist truckdrivers in handling delivery problems. These clericals distribute invoices and delivery tickets to the drivers and are responsible for monetary receipts submitted by those drivers. The clericals also compile productivity reports for the warehousemen. Without restating the entire record, it is fair to conclude that the plant clericals perform many warehousing duties and that the amount of contact between plant clericals and other warehouse employees is high.

In contrast, the office clericals work in the main office which is separate from the warehouse. While several of the plant clericals must occasionally enter that office to perform their duties, the hearing officer found that any resulting contacts are insignificant. Secondly, the rate of interchange between office and plant clericals is low. Seaway does not provide either unit of employees with notice of job openings in the other group. Permanent transfers from one unit to the other are infrequent[4] and temporary transfers never occur. Thirdly, while the main office clericals all work on the first shift, many of the plant clericals work on the second and third shifts as is required by the nature of the warehouse operation. The second and third shift clerical employees therefore have little or no contact with main office personnel. Finally, the hearing officer pointed out that the office and plant clericals tend to use different timeclocks and lunch rooms. Considered as a whole, the record indicates that contacts between the office and warehouse clerical workers are insubstantial.

---

**3.** No bargaining history is present in this case. The fourth factor listed by the ninth circuit, "employee desires," is not a relevant factor in this circuit. *NLRB v. Pinkerton's, Inc.,* 428 F.2d 479, 484 (6th Cir.1970).

**4.** The record reflects that three persons have requested and been granted a transfer from one

unit to the other. The Board has stated that where the number of transfers is low and where the transfers that do occur are voluntary rather than required by management, the employee interchange factor tilts in favor of separate bargaining units. *Razco, Inc.,* 227 NLRB 1186, 1187 (1977).

The record also reflects that the two units are separately supervised. Most of the warehouse clericals are supervised by Robert Schafer, who does not supervise office personnel. Secondly, several plant clericals are supervised by warehouse floor personnel. Although Seaway argues that decisions regarding the hiring, firing, promotion and so forth of all employees are controlled by the personnel department, the fact remains that the day-to-day supervision of office and plant clericals is separate. Under these circumstances, the supervision factor augers in favor of different bargaining units.

After weighing all of these factors, we cannot say that the Board's decision was arbitrary, unreasonable or an abuse of discretion. Application of the community of interests test taken together with the Board's policy of not joining office and plant clerical workers in the same bargaining unit supports the conclusion that the unit selected in the present case was appropriate. Accordingly, the order of the National Labor Relations Board is ENFORCED.