**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**THE WESTIN HOTEL, Respondent.**

Nos. 83–5358, 83–5391.

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1984.

Decided July 24, 1984.

Elliott Moore, Deputy Associate Gen. Counsel, John Elligers, Sharon Margolis Apfel, Jane A. Yanulis, Washington, D.C. (argued), for petitioner.

Paul C. Sunderland, Wilbur L. Collins (Lead), (argued), Taft, Stettinius & Hollister, Cincinnati, Ohio, for respondent.

Before EDWARDS and KENNEDY, Circuit Judges, and JOINER, District Judge.[*]

CORNELIA G. KENNEDY, Circuit Judge.

The National Labor Relations Board seeks enforcement and The Westin Hotel ("Westin") seeks review of the NLRB's order that the Westin bargain with the International Union of Operating Engineers, Local 20 ("Operating Engineers") as representative of the Westin's maintenance department employees. The Westin declined to bargain in order to test the Board's decision to designate the Westin's maintenance department an appropriate bargaining unit and to direct an election in that unit.

On April 17, 1981, the Operating Engineers filed a representation petition seeking certification as the bargaining representative for the Westin's maintenance department employees.[1] On April 21, 1981, however, the Hotel, Motel, Restaurant Employees and Bartenders Union, Local 12 ("Local 12") notified the Westin that it had obtained authorization cards from a majority of employees in an overall unit consisting of all the Westin's service employees (including maintenance employees). After investigating Local 12's majority support, the Westin agreed to recognize Local 12 as the representative of the overall unit, excluding the maintenance employees pending resolution of the Operating Engineers' petition for certification.

Local 12 intervened in the proceeding on the certification petition, also contending that the maintenance employees' unit was inappropriate and asking for an overall unit. A hearing was held before the NLRB's Regional Director concerning the appropriateness of the unit sought by the

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1. The Operating Engineers also sought to include the Westin's key control officer in the unit, but the Regional Director excluded the key control officer from the proposed unit.

Operating Engineers. The Regional Director described the maintenance employees' duties as follows:

> the 11 employees assigned to that department perform a wide variety of repair and maintenance work throughout the facility, such as hanging pictures, moving and routine repair of furniture, installing and monitoring gauges, carpentry work, making vinyl wall, lamp, refrigeration, air conditioning and minor television repairs, replacing shower heads, making boxes and racks, unstopping drains and toilets, installing and servicing laundry, kitchen and other equipment, wallpapering and painting small areas, maintaining the sprinkler system and making minor modifications to certain plumbing and electrical equipment. They are also responsible for monitoring the boilers and for their chemical treatment.

The maintenance employees are not responsible for major repairs or large redecorating projects.

The Regional Director then made the following finding:

> noting in particular the unique skills and training possessed by the engineering and maintenance employees, the difference in function between the engineering and maintenance department and the other departments at the hotel, the engineering and maintenance employees' separate supervision, primary work area, budget, training and areas of responsibility, the general lack of interchange between the engineering and maintenance employees and the other hourly employees, and the paucity of a definite pattern of area bargaining on a broader basis, I am constrained to find that the engineering and maintenance department employees enjoy a sufficiently distinct community of interest, apart from any broader interests they may share with other hotel employees, to warrant their separate representation.

The Regional Director therefore directed a representation election to be held in the maintenance department unit.

The Westin and Local 12 moved for reconsideration by the Regional Director. The Regional Director denied the motions. He recognized that Local 12's desire to represent a hotel-wide unit was one factor to be considered, but found this factor outweighed by "[t]he weight of the record evidence, particularly the unique skills possessed by the maintenance employees, their separate supervision, and the paucity of a current area-wide pattern of bargaining on a broader unit basis."

The Westin and Local 12 then requested review of the Regional Director's decision by the NLRB. The NLRB granted the request for review, but on review adopted the Regional Director's findings (with one minor exception) [2] and ordered an election held. The Operating Engineers received all eleven votes in the election and was certified as representative of the maintenance employees. In order to obtain review of the Board's unit determination, the Westin refused to bargain with the Operating Engineers. The Westin now appeals from the Board's May 19, 1982 order finding that the Westin committed an unfair labor practice by refusing to bargain, and ordering the Westin to bargain with the Operating Engineers.[3]

■ It is well-settled law that the Board has considerable discretion to choose from among a range of appropriate bargaining units. *See, e.g., NLRB v. American Seaway Foods, Inc.*, 702 F.2d 630, 632 (6th Cir.1983); *NLRB v. Continental Corp.*, 612 F.2d 257, 258–59 (6th Cir.1979); *Michigan Hospital Service Corp. v. NLRB*, 472 F.2d 293, 294 (6th Cir.1972). In determining whether a particular unit is appropriate, the Board uses the same "community

---

**2.** The Board found that the Regional Director's statement that the engineering and maintenance department had its own budget was not supported by the record, but held that the result was unaffected.

**3.** The Board's decision is reported at 261 N.L. R.B. 1005, 110 L.R.R.M. 1145 (1982).

of interest" criteria for the hotel industry as it uses for other industries.[4] *See Dunfey Family Corp.*, 210 N.L.R.B. 790, 86, L.R.R.M. 1224 (1974); *Hotel Equities*, 171 N.L.R.B. 1347, 68 L.R.R.M. 1247 (1968); *77 Operating Co.*, 160 N.L.R.B. 927, 63 L.R.R.M. 1057 (1966). The Board will weigh all the relevant factors present in a given case and decide whether the employees of the proposed unit share interests to such a degree that they should be grouped together for collective bargaining purposes. *Hotel Equities; 77 Operating Co.*

In the present case, the Regional Director relied on a number of factors in finding that the maintenance department was an appropriate unit. On motion for reconsideration, he singled out three factors for particular reliance. However, the existence of one of those three factors— "the paucity of a current area-wide pattern of bargaining on a broader unit basis"—is not supported by substantial evidence in the record considered as a whole.

The most significant evidence on whether there was a consistent area-wide pattern of bargaining on a broader unit basis consisted of the testimony of Oscar G. Lee, Local 12's president. Lee had been an officer of Local 12 or one of its predecessor unions since 1945. Lee described the history of collective bargaining at hotels within the eight-county region surrounding Cincinnati comprising Local 12's jurisdiction.

Lee testified that the first collective bargaining agreements in the Cincinnati hotel industry were signed in 1937. Under these agreements, Lee testified, fifteen to eighteen unions represented different categories of employees along craft lines. These unions formed a group known as the Cincinnati Hotel Employees Council. According to Lee six hotels were organized in this

fashion from 1937 to 1947. The Terrace Hilton was the last hotel organized according to this pattern. This was in 1947. Of these six hotels, the Terrace Hilton and the Netherland Hilton were the only two in existence at the time of the hearing.[5]

Lee also testified concerning the current representation of Cincinnati-area hotel employees. Lee testified that, except for unions at the Terrace Hilton and the Netherland Hilton, Local 12 was the only labor organization representing employees at hotels in the eight-county area at the time of the hearing. He also testified, through a chart introduced as Intervenor Exhibit # 1, that Local 12 represented, or had represented in recent years, employees at eight area hotels; that in each of these hotels Local 12 represented an overall unit of service employees; and that at five of the eight hotels the overall unit included maintenance employees, at two the unit included housemen who performed maintenance work, and that the remaining hotel did not employ maintenance workers. No other hotels besides these and the Terrace Hilton and the Netherland Hilton were organized.

Lee's testimony, which is not contradicted by any evidence in the record, clearly establishes the existence of a consistent area-wide pattern of bargaining in units broader than the maintenance unit the Board found appropriate in this case. Every Cincinnati-area hotel organized since 1947 bargains with an overall unit of hotel service employees, which includes maintenance employees at every hotel employing maintenance personnel. The existence of two holdovers from the pre-1947 practice of organizing along craft lines cannot negate the fact that during the thirty-five years prior to the hearing in this case the pattern

4. For a long time the Board followed the rule, articulated in *Arlington Hotel Co.*, 1268 N.L.R.B. 400, 45 L.R.R.M. 1319 (1960), that in the hotel industry only units comprising all operating personnel, with certain exceptions, would be deemed appropriate. The Board overruled *Arlington*, however, in *77 Operating Co.*, 160 N.L.R.B. 927, 63 L.R.R.M. 1057 (1966), where it decided that the hotel industry should be subject to the general rule that each case should be

decided on whether its particular facts establish a sufficient community of interest.

5. At oral argument counsel for the Westin stated that the Netherland had closed and reopened under new ownership after the date of the hearing. Since this fact was not before the Board, however, we do not rely on it.

of organizing only overall units was followed without exception.

The Regional Director viewed the area bargaining practice as mixed because "maintenance employees at two of the three large downtown hotels (similar to the [Westin]), are represented separately." Apparently the three large downtown hotels referred to are the Netherland Hilton, the Terrace Hilton, and Stouffer's. This inference does not constitute substantial evidence of a mixed bargaining practice. Since the Netherland and the Terrace Hilton were organized under the pre-1947 bargaining pattern, and the current pattern has been shown to differ from the pre-1947 pattern, the unit size at the Netherland and the Terrace Hilton is not probative of the current practice. There is absolutely no evidence that the Westin is so dissimilar from the other organized hotels that the currently prevailing pattern would not include the Westin. That an overall unit including maintenance employees was formed at Stouffer's (a downtown hotel larger than the Westin, the Netherland, or the Terrace Hilton) indicates instead that the prevailing bargaining pattern does extend to large downtown hotels.[6]

When it ordered a separate representation election in the maintenance department the Board relied upon its finding of a lack of a consistent area-wide pattern of collective bargaining in units larger than the maintenance department. Since this finding is not supported by substantial evidence in the record considered as a whole, the Board's order to bargain with the Operating Engineers cannot be enforced. The evidence supporting the other two factors particularly relied upon, the maintenance employees' "unique skills" and their separate supervision, is not very strong, although we cannot say these findings are unsupported by substantial evidence. The evidence shows that a few maintenance employees were skilled engineers but others were essentially unskilled, and that while their primary supervision was separate the maintenance employees were occasionally directed by supervisors from other departments. The Board also recognized that there were factors militating in favor of an overall unit. We therefore cannot assume that the Board would have directed a separate election in the maintenance department absent its unsupported finding concerning the area bargaining pattern. Accordingly, enforcement is denied and the case is remanded to the Board.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge, dissenting.

The Board petitions for enforcement of an order to bargain with a unit of 11 maintenance employees while the Westin Hotel cross-petitions protesting the Board's determination of a separate craft union for

**6.** The Westin also contends that the finding in this case that the Cincinnati area bargaining practice is mixed is inconsistent with the Board's decision in *LaRonde Bar and Restaurant, Inc.,* 145 N.L.R.B. 270, 54 L.R.R.M. 1365 (1963). The Westin claims that in *LaRonde* the Board found a "Cincinnati area practice of including all hotel employees, excluding clericals, in a single unit." Respondent's Brief at 18. On motion for reconsideration, the Regional Director distinguished *LaRonde* by reasoning as follows:

That case, decided almost 20 years ago upon a different record, depicted an area-wide bargaining pattern different from that which now exists. The Decision and Direction of Election clearly shows the current bargaining practice is mixed, and thus changed from that existent [sic] in *LaRonde, supra.*

If in *LaRonde* the Board had indeed found a consistent area-wide practice of including all service employees in a single overall unit, it could not now find that the area practice has become mixed without being inconsistent. There is no evidence in the record that indicates any trend toward smaller bargaining units since 1963 when *LaRonde* was decided. However, the Board did *not* make such a finding in *LaRonde.* In *LaRonde,* the Board relied only on a finding of an area bargaining practice of not including clerical workers in the same unit as service employees. The Board did note that the Cincinnati Hotel Employees Council, made up of various labor organizations, had bargained on an association-wide basis for all hotel employees except clerical workers and pool attendants. Thus the Board did not find that the Cincinnati hotels were organized on a unitary basis but only that the Council bargained on a unitary basis.

same. The facts as determined by the ALJ, some of them strongly disputed by Westin, are as follows:

The Employer, a Washington corporation, has been, since March 19, 1981, engaged in the operation of a hotel and restaurant complex at its Fountain Square South, Cincinnati, Ohio location, where it employs approximately 600 employees of whom 11 are assigned to the engineering and maintenance department. The Employer on May 11, 1981, voluntarily recognized the Hotel, Motel, Restaurant Employees and Bartenders Union, Local 12, herein called the Intervenor,[2] as the bargaining representative for an essentially all employee unit consisting of approximately 347 hourly employees including the 11 engineering and maintenance employees sought herein,[3] as well as those in the traditional hotel classifications of housekeeping, food and beverage, bellpersons and various subclassifications thereof.

The Petitioner seeks to represent a unit consisting of all the engineering and maintenance department employees, including the Key Control Officer but excluding all other employees. In the alternative, the Petitioner is willing to proceed to an election among the aforementioned engineering and maintenance department employees, excluding the Key Control Officer and all other employees. The Employer and the Intervenor, on the other hand, contend that the only appropriate unit is an overall one consisting of all hourly motel/restaurant employees, excluding all office clerical employees, supervisors and professional employees.

---

[2] The Intervenor was permitted to intervene upon sufficient showing of interest. It has done so solely in order to protest the Petitioner's unit request and does not wish to appear on the ballot in the event that an election is directed in any unit.

[3] I note that any bargaining history arising from such a voluntary agreement for such a brief period is not a militating factor in deter-

mining the appropriateness of a bargaining unit. *TRT Telecommunications*, 230 NLRB 139. Moreover, since the recognition agreement was reached after the filing of the Petition, it cannot constitute a bar to an election herein.

The issue in the case appears to be: Did the NLRB abuse its discretion in finding that the Westin's maintenance employees constituted an appropriate bargaining unit and that the Westin violated the Act by refusing to bargain with the designated unit?

Section 9(b), 29 U.S.C. § 159(b), of the Act provides that:

the Board shall decide in each case ... in order to assure the employees the fullest freedom in exercising the rights guaranteed by the Act, the unit appropriate for collective bargaining.

Section 9(b) clearly conveys to the National Labor Relations Board authority to make appropriate bargaining unit decisions. While there is certainly a significant dispute of fact in this case between the International Union of Operating Engineers, Local 20 and the Westin Hotel over the appropriateness of the maintenance employee bargaining unit, the record of the proceedings supplies an ample basis for the Board's determination. I do not see how this court can appropriately term its order an abuse of discretion.