**AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, CLEVELAND LOCAL, AFL–CIO (AFTRA), Plaintiff-Appellant,**

v.

**STORER BROADCASTING COMPANY, Defendant-Appellee.**

No. 83–3266.

United States Court of Appeals, Sixth Circuit.

Argued May 8, 1984.

Decided Oct. 5, 1984.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 29, 1984.

Thurlow Smoot (argued), Cleveland, Ohio, for plaintiff-appellant.

F. Wilson Chockley (argued), Walter, Haverfield, Buescher & Chockley, Michael T. McMenamin, Victor J. Leo, Cleveland, Ohio, for defendant-appellee.

Before KENNEDY and WELLFORD, Circuit Judges, and COHN, District Judge.*

COHN, District Judge.

This is an appeal from a judgment vacating a labor arbitration award under Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185. The judgment effectively reversed an arbitrator's determination that the position of assignment editor at Storer Broadcasting Company's (Storer) television station in Cleveland, Ohio, WJKW–TV, was not supervisory as that term is defined in Section 2(11) of the National Labor Relations Act (NLRA), 29 U.S.C. § 152(11), on the basis that the arbitrator exceeded his authority. Appellant, American Federation of Television and Radio Artists, Cleveland Local, AFL–CIO (AFTRA), sought enforcement of the award against appellee, Storer, in the district court. Storer counterclaimed for an order vacating the award. We find that the arbitrator's decision involved the interpretation of a substantive provision of a collective bargaining agreement. This kind of decision is within the peculiar province of an arbitrator and is to be enforced as long as the decision "draws its essence" from the agreement of the parties. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *W.R. Grace & Co. v. Local 759*, 461 U.S. 757, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298, 51 U.S.L.W. 4643, 4645 (May 31, 1983). *United Steelworkers of America v. Timken*, 717 F.2d 1008, 1009 (6th Cir.1983). The district judge concluded that the arbitrator

---

* Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation.

exceeded his authority and rejected the arbitrator's resolution of the issues committed to him by agreement of the parties. We reverse.

## I.

### A.

The grievance arbitrated took the form of a letter, dated September 7, 1980, from Kenneth Bichl (Bichl), executive secretary of the Cleveland Local of AFTRA, to Virgil Dominic (Dominic), news director at WJKW. The letter, citing Article 10, section (d) of the collective bargaining agreement (see p. 5, *infra* ), requested that Storer discharge Richard C. Patrick (Patrick), WJKW producer/assignment editor, for failing to belong to AFTRA while performing bargaining unit duties as an assignment editor. AFTRA maintained that the assignment editor position was a bargaining unit position until 1980 when Storer attempted to use non-union personnel on a permanent basis. Storer maintained that it could assign either non-union or union personnel to act as assignment editor. On March 31, 1981, the arbitrator sustained the grievance, holding that "Patrick was assigned to a position which, when utilized, must be staffed with a union member" and ruled that Patrick should be offered an opportunity to join AFTRA but, if he failed to do so, he was to be discharged. On AFTRA's complaint for enforcement of the award, the district court remanded the matter to the arbitrator for a determination of whether assignment editors at WJKW–TV are supervisors within the definition of Section 2(11) of the NLRA since supervisors, as defined in the NLRA by the terms of the agreement, were excluded from recognition. Specifically the district court said,

It is obvious that if assignment editors are supervisors within the meaning of section 2(11), the arbitrator exceeded his authority in holding that this position is reserved for union members. Because the arbitrator's award fails to indicate that he addressed this issue, and, moreover because the record, as presently constituted, is not sufficiently developed to enable this Court to resolve the status of assignment editors vis-a-vis the section 2(11) definition of supervisors, the Court cannot effectively determine whether the arbitrator has exceeded the boundaries of his authority as established by the agreement. Therefore, the proper procedure at this juncture is to remand the instant action to the arbitrator for a determination of whether assignment editors, as employed by Storer at WJKW–TV, are supervisors within the definition of section 2(11).

▮ Thereafter the arbitrator determined that assignment editors were not supervisors. In finding that determination to be faulty the district court said,

Because the assignment editor position is supervisory as that term is defined in Section 2(11), the post is excluded by the Agreement ... insofar as the arbitrator's contrary determination rested upon an erroneous application of the law ... to the arbitrator's factual finding ... as well as upon an improper sojourn into matters beyond the plain language of the contract, there is manifest a clear failure to draw the essence of the award from the agreement.[1]

### B.

The relevant portions of the collective bargaining agreement read as follows:

(Article) 1. *RECOGNITION.*

The Company recognizes FTRA as the exclusive collective bargaining agent for all Staff Announcers, Staff Special Announcers, Staff News Editors and Free

---

1. The district court cited *Detroit Coil v. International Association of Machinists,* 594 F.2d 575 (6th Cir.1979), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979) as analogous to its holding. In *Detroit Coil* this court found that the particular section of the collective bargaining agreement interpreted by the arbitrator was "clear and unambiguous" and that an examination of the record before the arbitrator revealed "no support whatever for his determinations." As will be seen, the definition of "supervisor" under the NLRA is not clear and unambiguous. See note 4, *infra.*

Lance Performers now or hereafter employed or engaged by the Company at Station WJKW–TV, Cleveland, Ohio all being hereinafter referred to (except in cases where distinction between classification is pertinent) as Staff Artists or as Free Lance Artists, and *excludes from recognition* continuity writers, technicians, engineers, instrumental musicians, office and clerical employees, watchmen, guards and *supervisors as defined in the National Labor Relations Act as amended.* (emphasis added)

(Article) 2. *CLASSIFICATION AND DUTIES OF ARTISTS.*

a) Artists shall be classified and assigned duties as follows;

A *Staff News Editor* is defined as an employee whose duties include gathering, editing and writing of news and other informational and public interest material for station's programs.

(Article) 3. *UNION SHOP.*

It is a condition of employment that all Artists covered by this Agreement who are members of AFTRA in good standing on the execution date of this Agreement shall remain members in good standing, and those who are not members on the execution date of this Agreement, shall ... become and remain members in good standing of AFTRA.

(Article) 10. *ARBITRATION.*

a) Upon notice of Arbitration as set forth in Section 9, the dispute shall be settled by arbitration in accordance with the rules the obtaining of the American Arbitration Association, each party bearing one-half of the expense and judgment upon the award rendered may be entered in the highest court of the forum, state, or federal, having jurisdiction. Subject to the Company's performance of the foregoing, AFTRA agrees that there will be no stoppage of work during arbitration or prior to the rendition of the award and the parties agree that all awards rendered will be binding upon them.

b) All arbitrations shall be conducted within the City of Cleveland, Ohio.

c) The Arbitrator shall not add to, subtract from, or vary the terms of this Agreement.

d) Should the company refuse AFTRA's request to discharge an employee for non-payment of initiation fee or dues, the following expedited procedure shall be followed in lieu of the procedure set forth above:

1) The Artist involved shall immediately be removed from duty.

2) Representatives of the Company and of AFTRA shall meet within forty-eight (48) hours. At that meeting, an agreement shall be reached on a person to act as arbitrator in the matter, or if there is no agreement as to an Arbitrator, the parties, both Company and Union, must jointly request the American Arbitration Association to set in motion its expedited arbitration procedure. The only issue to be decided by the arbitrator shall be whether the employee or employees involved are to be discharged for failure to pay initiation fees or dues.

*SCHEDULE "A"—COMPENSATION OF TELEVISION ARTIST.*

b) Assignment Editor. The Company may, at its option, assign a News Editor as an Assignment Editor. If so assigned, compensation shall be 10% above the applicable base hourly rate for hours worked as Assignment Editor. The specific duties of the Assignment Editor shall be determined by the Company.

The term Supervisors is defined in the NLRA as follows:

(11) The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct the, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

## II.

### A.

At the hearing before the arbitrator on remand Patrick, Dominic and union member and reporter Neil Flanagan (Flanagan) testified. The parties stipulated that Pete Cary (Cary), a news reporter who worked as assignment editor, would have given the same testimony as Flanagan. The arbitrator summarized the testimony as follows:

Patrick ... works as Assignment Editor from 7 a.m. to 1:30 p.m. on Wednesday, Thursday and Friday and as weekend Producer on Saturday and Sunday .... Flanagan is regularly scheduled to work as Assignment Editor from 1:30 to 11:30 Wednesday, Thursday, and Friday and from 9:30 a.m. to 6:30 p.m. on Saturday and Sunday. Other reporters and, less often, non-union personnel, fill in.

. . . . .

Flanagan stated that although he assigns work to reporters and camerapersons when an unexpected or 'breaking' story occurs he does so with the approval of the producers, Executive Producer Tony Ballew or Dominic, obtained before or immediately after the assignment is made. Most assignments are determined by Dominic, Ballew and Patrick in a meeting held at 2:30 p.m. each weekday afternoon and communicated to the Assignment Editor through the assignment sheet ... or the assignment board which is updated periodically. Only stories that could not be anticipated are assigned by the Assignment Editor.

Patrick testified that although reporters are 'invited' to the 2:30 meetings he had never seen one attend. He stated that he sometimes clears an assignment with a producer but usually does not. He said that he had seen Flanagan make an assignment without prior approval. Flanagan stated that he has done so but then would inform a producer and recall the reporter if told to do so. Patrick testified that if a producer is there he would check with him or her before replacing a sick employee or assigning a reporter already assigned to a story on the assignment sheet ... Patrick and Flanagan stated that in their position as Assignment Editors they had never hired, transferred, suspended, laid off, promoted, discharged, or otherwise disciplined employees, awarded salary increases or bonuses to employees or adjusted their grievances.

. . . . .

Dominic stated that Assignment Editors are required as part of the job to schedule overtime without the approval of a producer. Flanagan testified that he is not permitted to assign overtime without the permission of a producer. Dominic stated that the Assignment Editor makes an assignment in a way dictated by Dominic.

Flanagan stated that many of his decisions are not final decisions which rest with the producer. He testified that, "Ultimately the decision on ... what [sic] reporter covers the story is made by the producer, not by the Assignment Editor."

### B.

The arbitrator found, based on the testimony, that assignment editors made decisions regarding assignments only on breaking stories and that all other assignments were predetermined. He further found that decisions on breaking stories were subject to countermand and sometimes to prior approval and that the function of assigning work to reporters was restricted by the decisions in the 2:30 meeting, subsequent management decisions reflected on the assignment board and instances of approval being granted or Dominic dictating the decision to be made. The arbitrator further found that the occasional making of decisions by assignment editors did not require the exercise of independent judgment or the formulation or development of company policy. Since the arbitrator found from the testimony that assignment editors did not possess the power to hire, transfer, discharge, reward, promote, discipline, or any of the other authorities enumerated in

Section 2(11), he concluded assignment editors were not supervisors within the meaning of the NLRA. Specifically the arbitrator said,

> Article I, Recognition, of the Agreement states, 'The Company ... excludes from recognition ... supervisors as defined in the National Labor Relations Act as amended.' The Company now maintains that the Assignment Editor is a supervisory position yet at the time of the grievance, and before then, it appointed Union members to this position.
>
> Assignment Editors do assign work but their authority is limited by the dictates and countermands of management. The fact that the Company places a management employee on the assignment desk in violation of the established past practice acknowledged by Union Exhibit # 27 does not make a non-supervisory position a supervisory one.

■ The arbitrator's decision was essentially based on his factual finding, and it was substantially supported in the evidence presented, that assignment editors such as Patrick do not have, or exercise, supervisory authority at WJKW–TV.[2] He accepted the testimony of Flanagan (and Cary) that they did not hire, transfer, suspend, lay off, recall, promote, discharge, remand or discipline employees. He found that assignment editors do not evaluate employees, and that decisions on breaking stories are subject to producer countermand and prior approval. He also found that the company's past practice of appointing union members to the position confirms it did not grant them supervisory authority. Thus, whether we were to agree or disagree with such finding if we were factual determiners, the arbitrator found that assignment editors do not independently assign work.

**2.** There was, to be sure, evidence that Patrick did exercise supervisory authority, but the arbitrator's factual determination should not be disturbed if there is reasonable evidence to support it. Cases before the N.L.R.B. involving assignment editors have gone both ways, depending upon the particular factual situation. *See*

Generally federal courts are precluded from overturning arbitration awards for errors in the determination of factual issues. It is only when examination of the record "before the arbitrator reveals no support whatever for his determination that the award must be vacated." *Detroit Coil v. International Assoc. of Machinists & Aerospace Workers*, 594 F.2d 575, 581 (6th Cir.1979), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). In the context of the review of a National Labor Relations Board decision on Section 2(11), the Supreme Court has said that the question of whether a particular position involves supervisory status under the NLRA is a mixed question of fact and law. *National Labor Relations Board v. Yeshiva University*, 444 U.S. 672, 691, 100 S.Ct. 856, 867, 63 L.Ed.2d 115 (1980). However, as is evident from the array of criteria contained in Section 2(11), the inquiry is predominantly factual. *Beverly Enterprises v. National Labor Relations Board*, 661 F.2d 1095, 1099 (6th Cir.1981).

### III.

■ Since the arbitrator cited no legal authority interpreting the Act's definition of "supervisor," it is unclear as to whether he considered his opinion to determine a legal issue as well as a factual one. The extent of an arbitrator's authority to construe collective bargaining agreements by interpreting public law is not altogether clear. *See* Kaden, *Judges and Arbitrators: Observations on the Scope of Judicial Review*, 80 Colum.L.Rev. 267, 288–89 (1980).

> Because the "specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land," *id.*, at 57; see *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 544, at 581–582, 80 S.Ct. 1347 at 1352–1353, 4

*N.B.C., San Francisco and NABET*, 160 NLRB 1440, 62 LRRM 1143 (1966); *Taft Broadcasting Co. & Local 71, IBEW*, 226 NLRB 540, 94 LRRM 1089 (1976); *Great Western Broadcasting d/b/a KX–TV, et al.*, 192 NLRB 1203, 78 LRRM 1163 (1971); *Westinghouse Broadcasting Co., et al.*, 195 NLRB 339 (1972).

L.Ed.2d 1409, many arbitrators may not be conversant with the public law considerations underlying the FLSA. FLSA claims typically involve complex mixed questions of fact and law—*e.g.,* what constitutes the "regular rate," the "work-week," or "principal" rather than "preliminary or postliminary" activities. These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings. Although an arbitrator may be competent to resolve many preliminary factual questions, such as whether the employee "punched in" when he said he did, he may lack the competence to decide the ultimate legal issue whether an employee's right to a minimum wage or to overtime pay under the statute has been violated. (footnotes omitted.)

*Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 743, 101 S.Ct. 1437, 1446, 67 L.Ed.2d 641 (1980). The Supreme Court rationale in *Barrentine* pertaining to FLSA would apply equally well to NLRA complexities. The Supreme Court noted that "a substantial portion of labor arbitrators are *not lawyers*" (emphasis added) in *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 57 n. 18, 94 S.Ct. 1011, 1024 n. 18, 39 L.Ed.2d 147 (1974).

■ As described above, however, generally an arbitration award is to be enforced as long as it draws its essence from the collective bargaining agreement. *United Steelworkers v. Timken, supra.* A federal court may not overrule an arbitrator's decision on the grounds that its interpretation of that contract would be better. *W.R. Grace & Co. v. Local 759, supra.*[3]

Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator.

103 S.Ct. at 2183.

Here, the parties, in defining the particular group of employees to be represented by AFTRA excluded supervisors. They defined supervisors in terms of NLRA definitions. The parties may well have intended by this reference to permit the arbitrator to determine what that law is in this circumstance. We do not find it necessary to decide whether the direction to the arbitrator to determine whether an employee is a supervisor "as defined in the NLRA" gives the arbitrator the unquestioned right to interpret the NLRA free of any judicial oversight except in case of manifest disregard of the law. Regardless of the district judge's view of the correctness of the arbitrator's interpretation of the contract or what the district judge might have decided had the determination been committed to his jurisdiction initially, Storer and AFTRA bargained for the arbitrator's interpretation; the district court should not have second-guessed that interpretation, where that interpretation involved a mixed question of fact and law.

■ Our national labor policy favoring the resolution of labor disputes by arbitration "eliminates searching judicial review of the factual and legal accuracy of arbitrators' findings." *Local Union 59 v. Green Corp.,* 725 F.2d 264, 268 (5th Cir.1984). If an arbitration award represents a plausible interpretation of the contract based on essentially factual determinations within the context of the collective bargaining agreement, judicial inquiry should cease and the award should be enforced. This remains so notwithstanding any error in the legal conclusions based essentially upon record supported factual findings, absent a manifest disregard of the law, in situations involving a mixed fact-law determination. *George Day Construction Co. v. United Brother-*

---

**3.** *Grace,* however, recognized that an arbitrator's decision involving an explicit public policy (such as set out in Title VII of the Civil Rights Act of 1964) was subject to judicial review, because "the question of public policy is ultimately one for resolution by the court." 103 S.Ct. at 2183.

*hood of Carpenters,* 722 F.2d 1471, 1477 (9th Cir.1984).

In support of the conclusion that the arbitrator's award was without foundation, the district court said,

> [t]he testimony before the arbitrator clearly demonstrates that the assignment editor was responsible for the evaluation of breaking stories, for making the decision to cover the story, and for the assignment of the story. This responsibility was not routine, but required the assignment editor to exercise independent judgment in an identity of interest with the employer. . . .
>
> The arbitrator's reliance on the authority of producers over assignment editors to support his conclusion that the latter are non-supervisory is misplaced, *see Peoples Service Drug Stores, Inc. v. N.L.R.B.,* 375 F.2d 551, 554 (6th Cir. (1967), where, as here, the employees actual job responsibility, authority, and relationship to management are qualitatively within the enumerated functions of section 2(11).

It was simply not the function of the district court to comment on the correctness or incorrectness of the arbitrator's factual findings and legal conclusions in this fashion under the circumstances of this case. So long as the award drew its essence from the contract, the district court should have looked no further. *Green, supra.*

This is not a case where the award is palpably faulty or where it lacks foundation or fact or where its conclusion is not reasonable under the factual foundation established. For example, in *National Labor Relations Board v. Lauren Manufac-* *turing Co.,* 712 F.2d 245 (6th Cir.1983), this court held that line operators at a rubber products manufacturing plant, who performed substantially the same duties as assignment editors at WJKW–TV, were merely leaders, not supervisors. The court said,

> Congress defined supervisors separately from 'employees' because although supervisors can become members of a labor organization, no employer can be compelled to deem supervisors as employees for collective bargaining purposes. 29 U.S.C. § 164(a). This Circuit has emphasized that the mere performance of routine tasks or the giving of instructions to others is not sufficient to afford an individual supervisory status . . . Moreover, supervisory status is appropriately accorded those individuals who participate in formulating or determining policies for the employer with regard to labor relations.

*Id.* at 248. There are no bright lines controlling the determination of whether a particular position comes within the definition of "supervisor" under the NLRA.[4] Nor is this a case where the arbitrator's words reveal an unauthorized excursion beyond the bounds of the contract.

The real question presented by this appeal is whether a court or an arbitrator should decide if assignment editors at WJKW–TV perform work which meets the criteria for classification as "supervisor" under the NLRA, where the decision is based essentially upon factual findings. The parties agreed that this question should be resolved by arbitration, not liti-

---

**4.** A WestLaw search discloses eight published opinions by this court alone over the past ten years where the supervisor issue was litigated in the context of review of a National Labor Relations Board decision on Section 2(11). In three cases, the Board found the challenged positions to be non-supervisory and this court upheld the finding. *National Labor Relations Board v. Lauren Manufacturing Co.,* 712 F.2d 245 (6th Cir. 1983); *National Labor Relations Board v. Wilson-Crissman Cadillac,* 659 F.2d 728 (6th Cir. 1981); *Machine Tool & Gear, Inc. v. National Labor Relations Board,* 652 F.2d 596 (6th Cir. 1980). In two cases, the Board found the positions to be supervisory and this court affirmed. *National Labor Relations Board v. Baja's Place,* 733 F.2d 416 (6th Cir.1984); *National Labor Relations Board v. Publishers Printing Co.,* 625 F.2d 746 (6th Cir.1980). In two cases, the Board found the positions to be non-supervisory and this court reversed. *National Labor Relations Board v. Medina County Publications, Inc.,* 735 F.2d 199 (6th Cir.1984); *Beverly Enterprises v. National Labor Relations Board,* 661 F.2d 1095 (6th Cir.1981). And in one case involving challenges to five separate positions, the Board found all of the positions to be non-supervisory. This court affirmed as to two of the positions and reversed as to the other three positions. *National Labor Relations Board v. Detroit Edison Co.,* 537 F.2d 239 (6th Cir.1976).

gation. In determining that the work of the assignment editor did not meet the standard for supervisory status, as defined in the NLRA, the arbitrator was doing exactly what the parties agreed he should do.

### IV.

 Patrick worked three days a week as a producer, an admittedly supervisory position, and only two days a week as an assignment editor. The union was entitled under the collective bargaining agreement only to have him terminated *from the assignment editor position* if he failed to join the union. To require, in addition, as the arbitrator did, that Patrick be terminated from his supervisory position does not draw its essence from the collective bargaining agreement. In this respect, the arbitrator exceeded his proper authority and his award should not be enforced to the extent that it requires Patrick to be terminated from his position as producer. The judgment of the district court is reversed insofar as the arbitrator's award was set aside in its entirety. This case is remanded to the district court with directions to vacate the award to the extent that it requires Storer to terminate Patrick from his position as producer and to otherwise enforce the award.