**JONES DAIRY FARM,**
Plaintiff-Appellee,

v.

**LOCAL NO. P–1236, UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO,** Defendant-Appellant.

No. 84–1301.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1984.

Decided Feb. 15, 1985.

Posner, J., dissented and filed an opinion.

Kenneth R. Loebel, Habush, Habush & Davis, S.C., Milwaukee, Wis., for plaintiff-appellee.

Herbert P. Wiedemann, Foley & Lardner, Milwaukee, Wis., for defendant-appellant.

Before WOOD and POSNER, Circuit Judges and DUMBAULD,* Senior District Judge.

DUMBAULD, Senior District Judge.

 There is a strong policy, the classical formulation of which is to be found in

---

* The Honorable Edward Dumbauld, Senior District Judge, of the Western District of Pennsylva-  nia, sitting by designation.

the *Steelworkers' Trilogy*,[1] that by stipulating for arbitration under a collective bargaining agreement the parties are entitled to the arbitrator's judgment regarding matters submitted for determination, which is more apt to be imbued with the atmosphere and flavor of the workplace than the academic ivory-tower pronouncements of a court. Hence the courts should be slow to interfere with the settlement procedure which the parties have bargained for.

■ But this rule applies only when and where the arbitrator is acting pursuant to the agreement embodying what the parties have accepted by their *consensus ad idem*. Hence if the arbitrator acts *ultra vires* or goes beyond the scope delegated to him by the agreement of the parties, a court may properly set aside such an *excès de pouvoir*.

The line is best drawn by the language of the Supreme Court in *Enterprise*, 363 U.S. at 597, 80 S.Ct. at 1361 that the arbitrator's award "is legitimate only so long as it draws its essence from the collective bargaining agreement."

What did the agreement in the case at bar provide, and what did the arbitrator do?

With regard to the disputed issue of contracting out the janitorial work formerly performed by appellant union, the contract expressly provided that nothing was stipulated in that regard but that the status quo should be preserved:

> "With respect to the subcontracting of work, and the performance of work at this plant rather than elsewhere, each party retains its legal rights as in effect prior to the execution of this Agreement, and nothing in this Agreement shall be construed as adding to or subtracting from those rights."[2]

In other words, both parties reserve their rights under existing law. They are to enjoy no more and no less than they would if the collective bargaining agreement did not exist.

■ And under existing law, in the absence of agreement to the contrary, the employer remains free to contract out if he so desires, even if the motivation for the decision is a wish to pay lower labor costs. *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 106, 90 S.Ct. 821, 825, 25 L.Ed.2d 146 (1970); *University of Chicago v. NLRB*, 514 F.2d 942, 948–49 (7th Cir.1975).

But the arbitrator followed a contrary doctrine embodied in *Milwaukee Spring Division of Illinois Coil Spring Co.*, 265 N.L.R.B. No. 28 (1982) which was then on appeal, and subsequently was repudiated by the Board upon reconsideration. *Milwaukee Spring Division of Illinois Coil Spring Co.*, 268 N.L.R.B. No. 87 (1984).

■ Hence it cannot be said that the arbitrator's award "draws its essence from the collective bargaining agreement." (363 U.S. at 597, 80 S.Ct. at 1381, *supra.*). The agreement has no impact upon the issue in dispute. The arbitrator is simply expressing his opinion on a legal question, and courts (the bearers of expertise in such matters) are free to correct a mere mistake of law, as done by the District Court in its judgment setting aside and vacating the award.

The judgment of the District Court is AFFIRMED.

POSNER, Circuit Judge, dissenting.

Jones Dairy Farm agreed to arbitrate its dispute with the food-workers union over the contracting out of work, and the arbitrator interpreted the contract to forbid contracting out. The fact that in doing so the arbitrator may have made a mistake, even a mistake of law, is not a ground for

**1.** *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co., Corp.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960).

**2.** Article V, sec. 1.

setting aside his award. We should therefore reverse the district court.

If a labor arbitrator makes an award that is based on his interpretation of the collective bargaining contract (that "draws its essence from" the contract, in the accepted metaphor, see *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1381, 4 L.Ed.2d 1424 (1960); *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1162 (7th Cir.1984); *Local Union 59, Int'l Brotherhood of Electrical Workers v. Green Corp.*, 725 F.2d 264, 269 (5th Cir. 1984)), a court may not set aside the award even if based on a clear misinterpretation of the contract. Having found that the contract between Jones Dairy Farm and the food-workers union expressly reserved to the former its preexisting legal rights concerning the contracting out of work, the arbitrator proceeded to determine what those rights were and concluded that they did not in fact authorize contracting out. In so concluding the arbitrator was necessarily looking outside of the contract, to the right of contracting out when a collective bargaining contract does not regulate the practice. But he was looking out because the contract told him to look out. The contract made the external law on the question a part of the contract.

When he looked outside, he made an analytical mistake. He thought that the Labor Board's first *Milwaukee Spring* decision, *Milwaukee Spring Division of Illinois Coil Spring Co.*, 265 N.L.R.B. 206 (1982), which had established the principle that an employer who has a collective bargaining agreement cannot contract out work unless the agreement contains a clause permitting it, required him to conclude that Jones Dairy Farm could not contract out the work in question. We had seemingly held to the contrary of *Milwaukee Spring* in *University of Chicago v. NLRB*, 514 F.2d 942, 948–49 (7th Cir.1975), although the case may be distinguishable, and in any event I am not certain (and do not have to decide) that an arbitrator must follow circuit precedent that is contrary to Labor Board precedent. The Board is not bound by circuit precedent; maybe an arbitrator shouldn't be either. Nor do I think the arbitrator can be said to have made a mistake of law just because, *after* the arbitration award was handed down, the Labor Board repudiated the principle of its first *Milwaukee Spring* decision, in its second one, 268 N.L.R.B. No. 87, 115 L.R.R.M. 1065 (1984). The arbitrator's mistake lies in his interpretation of the first *Milwaukee Spring* decision. The Board there had interpreted the National Labor Relations Act to mean that an employer who is bound by a collective bargaining agreement may not shift work to another plant (or, presumably, contract out work) *unless the agreement authorizes him to do so.* See 265 N.L.R.B. at 210. As the agreement in that case was silent on the matter, the qualification did not come into play. But the agreement in this case is not silent on contracting out. It says or at least seems to say that there is no *contractual* limitation on the employer's right to contract out, that any limitations on that right must be found in the external law, which to the arbitrator meant, in the first *Milwaukee Spring* decision. But that decision was intended to state the rule for cases where the collective bargaining agreement does not waive the union's right to object to contracting out. The question in this case is whether the union waived that right by agreeing to the contracting-out clause. The arbitrator read *Milwaukee Spring* too broadly in thinking that it decides this case. He should have asked whether the clause in the collective bargaining agreement in this case was intended to give Jones Dairy Farm an absolute right to contract out, which would be permissible under *Milwaukee Spring*, or whether it merely incorporated current Board doctrine, whatever that might be, on collective bargaining agreements that are silent on the matter of contracting out. He did not ask the right question, and it is impossible to say therefore whether he came up with the right answer.

Maybe, indeed, he did something worse than misread a legal decision—maybe he forgot that his job was to interpret the

contract. In a sense he looked through rather than at the contracting-out clause. Instead of asking what light it cast on the parties' intent to permit or forbid the employer to contract out work, he asked what the Board's policy on the matter was as evidenced by *Milwaukee Spring*. But I do not think it would be right to conclude that his award does not "draw its essence" from the contract. The arbitrator looked at the clause first, determined that it required him to look at *Milwaukee Spring*, and then interpreted that case too broadly. The contract told him to make a legal determination, and he did that, but he did it wrong.

It might seem that we should be able to correct such a mistake, since it is a mistake of law. One reason for the extraordinary judicial deference to decisions of labor arbitrators is that arbitrators are specialists in interpreting labor contracts. See, e.g., *Enterprise Wheel & Car Corp. v. United Steelworkers, supra,* 363 U.S. at 596, 80 S.Ct. at 1380. There is no real issue of contract interpretation in this case as the arbitrator decided it; the only issue is the meaning of a decision of the Labor Board, an issue on which courts have the comparative advantage rather than arbitrators. This case rests uneasily in a middle area between an arbitration award based on a reading of the language of the contract— an award that clearly is enforceable—and an award based on the arbitrator's personal notions of justice—an award that clearly is unenforceable. We could say it was closer to the second than to the first pole if the only reason for the deference given the decisions of labor arbitrators were their comparative advantage over judges in interpreting collective bargaining contracts. But it is not. If it were, courts would not hesitate to set aside any arbitration award that was infected with a legal error and send the case back to the arbitrator for reconsideration under the correct legal standard. They do not; at least they did not until today. The principle that courts will defer even to the legal determinations of labor arbitrators is established in a long line of cases, none of which my brethren cite. See, e.g., *Anaconda Co. v. District*

*Lodge No. 27 of Int'l Ass'n of Machinists,* 693 F.2d 35, 37–38 (6th Cir.1982) (per curiam); *Local Union 59, Int'l Brotherhood of Electrical Workers v. Green Corp., supra,* 725 F.2d at 268–69; *American Federation of Television & Radio Artists, Cleveland Local (AFTRA) v. Storer Broadcasting Co.,* 745 F.2d 392, 398 (6th Cir.1984).

The most important reason for deference to labor arbitrators is that labor disputes ought to be resolved rapidly; and, to be fast, arbitration must be final. Its finality is seriously compromised if an error of law by the arbitrator is grounds for requiring the arbitrator to start over. Of course haste makes for error. But this is just to say that there is a tradeoff between celerity and accuracy. If an employer doesn't like the way arbitration strikes the tradeoff he needn't agree to an arbitration clause. The arbitrator's award in this case should be enforced.

It is true, though unremarked by my brethren, that many cases describe a "manifest disregard of the law" by the arbitrator as a ground for setting aside his award. E.g., *Anaconda Co. v. District Lodge No. 27 of Int'l Association of Machinists, supra,* 693 F.2d at 37–38; *Alhambra Foundry Co. v. General Warehousemen's Union, Local 598,* 687 F.2d 287, 290 (9th Cir. 1982). The source of this idea, which stands in uneasy contrast to the apparently well-settled principle that the arbitrator's legal errors are not reviewable, is language in a decision by the Supreme Court that did not involve labor arbitration: "the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation." *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953). Unfortunately the Court did not define "manifest disregard," and the context does not illuminate it. One interpretation, which is consistent with the fundamental principle of deference to awards that "draw their essence" from the collective bargaining contract, is that manifest disregard "might be present

when arbitrators understand and correctly state the law, but proceed to disregard the same" in favor of their private notions of justice. *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd.,* 293 F.2d 796, 801 (9th Cir.1961). An alternative interpretation more helpful to my brethren (though unmentioned by them) is that manifest disregard means "clearly contrary to the law." Although this interpretation was followed in *American Postal Workers Union v. United States Postal Service,* 682 F.2d 1280, 1284–85 (9th Cir. 1982), on the basis of an inaccurate citation to *San Martine* (see also *George Day Construction Co. v. United Brotherhood of Carpenters, Local 354,* 722 F.2d 1471, 1480 (9th Cir.1984)), no appellate court has actually set aside a labor arbitrator's award on this ground, as distinct from doing so because the award required the parties to do something in violation of a statute such as the National Labor Relations Act (another sense of "manifest disregard of the law"), or injured nonparties, or was otherwise against public policy. See, e.g., *Local No. P–1236, Amalgamated Meat Cutters v. Jones Dairy Farm,* 680 F.2d 1142 (7th Cir.1982); *Broadway Cab Cooperative, Inc. v. Teamsters Local Union No. 281,* 710 F.2d 1379 (9th Cir.1983). Nothing of the sort is involved here. Jones Dairy Farm may or may not have agreed to restrict its freedom of action to contract out work, but no one suggests that if it did, as the arbitrator held it did, the result is illegal, unfair to third parties, or otherwise contrary to public policy. There may be no legal limitation on contracting out in the circumstances presented by this case but there is no legal duty to contract out that the award might have violated.

Any broader interpretation of "manifest disregard of the law" rests primarily though tenuously on inference from cases which suggest that the arbitrator's competence is to interpret collective bargaining contracts rather than statutes, or that an arbitrator's errors of law are not correctable if entwined with a factual determination (implying that pure errors of law might be), or that a mere error in interpreting or applying law is not a manifest disregard of law (implying that a clear error might be). See, e.g., *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 53–54, 94 S.Ct. 1011, 1022–23, 39 L.Ed.2d 147 (1974); *American Federation of Television & Radio Artists, Cleveland Local v. Storer Broadcasting Co., supra,* 745 F.2d at 398; *Anaconda Co. v. District Lodge No. 27 of Int'l Ass'n of Machinists, supra,* 693 F.2d at 37–38; *General Tel. Co. v. Locals 1635, 1636 & 1637, AFL–CIO,* 427 F.Supp. 398, 399 (W.D.Pa.1977). But I have found only three cases that are like this one, and two are clearly inconsistent with our action today. In *Local Union 59, Int'l Brotherhood of Electrical Workers v. Green Corp., supra,* where the company challenged an arbitration award on the ground that the arbitrator had misunderstood the meaning of "alter ego" in corporation law, the court rejected this challenge, sensibly not distinguishing between pure and mixed questions of law, see 725 F.2d at 268–69—a distinction whose meaning as well as utility is obscure in the present context. In the *Storer Broadcasting* case, *supra,* where the collective bargaining contract excluded from recognition "supervisors as defined in the National Labor Relations Act as amended," 745 F.2d at 395, the court of appeals deferred to the arbitrator's interpretation of "supervisors" without undertaking its own analysis of whether he was correct—and held that the district court should not have made its own determination of the correctness of the arbitrator's interpretation. See *id.* at 398–99. However, *General Teamsters Local 162 v. Mitchell Bros. Truck Lines,* 682 F.2d 763, 766–67 (9th Cir.1982), can be read, though with difficulty, to imply that if the arbitrator's error of law in following an overruled case had been material, the award would have been set aside. This is the strongest precedent for what this court does today; it isn't much.

And even if there is enough play in the precedents to permit us to innovate, it would only be to the extent of allowing the arbitrator's award to be set aside for a

clear legal error—a qualification I do not find in my brethren's opinion and one in any event not applicable to this case, where the arbitrator's error was subtle rather than clear. But even as so qualified, my brethren's innovation is one we do not need. By agreeing to submit this dispute to arbitration without any challenge to the arbitrator's jurisdiction, Jones Dairy Farm has admitted that its right to contract out is arbitrable and that the arbitrator is therefore empowered to determine the parties' rights under external law, see *International Brotherhood of Teamsters, Local Union No. 117 v. Washington Employers, Inc.,* 557 F.2d 1345, 1350 (9th Cir.1977); Gorman, Basic Text on Labor Law 586–87 (1976), subject to the usual extremely limited judicial review. When the arbitrator does this he is interpreting the contract and his interpretation is entitled to the usual deference. Contracts are never self-contained; at the very least the dictionary is implicitly incorporated. They often use words that have a legal meaning, and by doing so incorporate external law; the cases cited earlier—cases that my brethren pass over in silence (*Anaconda, Green,* and *Storer*)—hold that an arbitration award is not vulnerable merely because the arbitrator got that legal meaning wrong. If Jones Dairy Farm had wanted to protect itself from the risk of the arbitrator's making a legal mistake—had wanted to have the usual judicial safeguards, which include plenary review of legal rulings made by the trial court—it should not have agreed to make the contracting-out clause arbitrable.

By affirming the district court without even citing the many cases that restrict the power of the courts to correct legal errors made by labor arbitrators, and without even confining its holding to clear errors, the decision today makes judicial review of labor arbitration uncertain, may encourage employers to resist enforcement of labor arbitration awards, and portends a most unwelcome expansion of the federal courts' properly modest role in the labor field. The district court's judgment should be reversed.