**LOCAL 710, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Plaintiff,**

v.

**MONTGOMERY WARD & COMPANY, INCORPORATED, Defendant.**

**No. 88 C 1206.**

United States District Court,
N.D. Illinois, E.D.

March 16, 1989.

## MEMORANDUM ORDER

PRENTICE H. MARSHALL, District Judge.

Plaintiff Local 710, International Brotherhood of Teamsters ("Local 710") brought this action against defendant Montgomery Ward & Co., Inc. ("Montgomery Ward") challenging defendant's subcontracting of work previously performed by union members to a wholly owned subsidiary not subject to the union contract. Plaintiff's complaint alleges that defendant's actions violate the terms of their collective bargaining agreement. Count I seeks an order compelling arbitration of the dispute. Alternatively, Count II asks that, if arbitration is not ordered, the court find defendant in violation of the contract and order an appropriate remedy. Before us now are the parties' agreed stipulation of facts and cross motions for summary judgment.

Local 710 and Montgomery Ward are parties to a collective bargaining agreement effective from April 1, 1985 through March 31, 1988. On May 2, 1987, Montgomery Ward laid off members of Local 710 when it transferred the work previously performed by these employees to a wholly owned subsidiary, American Delivery Service. American Delivery Service offered employment to the laid off employees, but only under terms not subject to the agreement between Local 710 and Montgomery Ward.

Article VII of the agreement sets forth a four step grievance procedure. The first three steps provide for review by various levels of management and a joint committee of management and union representatives. Step four allows either party to submit the dispute to arbitration if the grievance involves "discharge, suspension or the question of seniority" and remains unresolved after exhausting the first three steps. Defendant's Exhibit B, Article VII.

Local 710 submitted a grievance concerning the lay off, alleging that Montgomery Ward's actions violated a number of contractual provisions, including Articles V and IX governing seniority and discharge. *See* Plaintiff's Exhibit B. After the first three steps of the procedure failed to resolve the dispute, Local 710 demanded arbitration. Montgomery Ward refused to submit the matter to arbitration and this action ensued.

Local 710 first seeks an order compelling arbitration of their grievance. Such an order is available if, and only if, the parties have contractually agreed to arbitrate the dispute at issue. *Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Our task is thus to determine whether the arbitration clause in the parties' collective bargaining agreement, limited as it is to grievances involving "discharge, suspension or the question of seniority," is applicable to Local 710's challenge to Montgomery Ward's subcontracting of the delivery work.

In *AT & T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court outlined the limited scope of inquiries of this nature:

[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."

Finally, where it has been established that where [sic] the contract contains an

arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

475 U.S. at 649–50, 106 S.Ct. at 1418–19 (quoting *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), and *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53).

Here, the arbitration clause states that arbitration is available for disputes involving discharge and questions of seniority. Local 710 asserts in its grievance that Montgomery Ward's actions violate the provisions of the collective bargaining agreement pertaining to discharge and seniority. Under the standards above, our inquiry ends here and the matter must be referred to arbitration.[1] *See also Mobil Oil v. Local 8–766, Oil, Chemical & Atomic,* 600 F.2d 322, 327–28 (1st Cir.1979) (allegations that subcontracting violated recognition, seniority, and wage provisions are sufficient to invoke arbitration clause applicable to interpretations of "express" contractual provisions only).

Montgomery Ward argues that the collective bargaining agreement here contains an "explicit reservation" of the right to subcontract work performed by union members. This explicit reservation, it contends, is found in Article VI which provides:

> It is the mutual concern of the Company and the Union to preserve present employment to the extent reasonable, practical and consistent with sound business practices. To provide further protection for the senior drivers in the event the Company subcontracts work presently being performed by the Company, the Company will make every reasonable effort to have the carrier employ drivers who otherwise would be displaced by the subcontracting.

Defendant's Exhibit B, Article VI. Defendant concludes that there can therefore be no implied restrictions on subcontracting arising from the other provisions of the contract.

We agree with Local 710 that these arguments pertain to the merits of the dispute and, while possibly persuasive to the arbitrator, they are not grounds for denying arbitration. Montgomery Ward's position might prevail if the contract contained a clause specifically stating that disputes over subcontracting are not subject to arbitration. Similarly, if there was a clause specifically stating that, notwithstanding other provisions, management reserves the right to subcontract work, one might argue that subcontracting raises no questions regarding the scope of the discharge and seniority provisions, therefore the arbitration clause does not apply. The language relied on by Montgomery Ward, however, falls far short of these hypothetical provisions. At best, there exists a question of which implication should control, and resolution of this would "entangle" us in the merits of the dispute. In such circumstances, submission to arbitration is the appropriate course. *See Warrior and Gulf,* 363 U.S. at 585, 80 S.Ct. at 1354 (the court should not "become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause").

---

1. Conceivably, assertions made for the sole purpose of invoking the jurisdiction of the arbitrator might be exempt from the blanket rule quoted above. Local 710's argument that subcontracting is subject to limitations arising from the contract's discharge and seniority provisions, however, is not without precedential support. *See, e.g., Edward Hines Lumber Co. v. Lumber & Sawmill Workers,* 764 F.2d 631, 635 (9th Cir. 1985) (arbitrator may find that, despite lack of express prohibition on subcontracting, other substantive provisions of contract give rise to implied restrictions) *cert. denied,* 475 U.S. 1131, 106 S.Ct. 1661, 90 L.Ed.2d 203 (1986); *International Union, United Automobile, Etc. v. Webster Electric Co.,* 299 F.2d 195, 197 (7th Cir.1962) (subcontracting "inconsistent with the basic purpose" of contract containing a union shop provision).

Nor are we persuaded by Montgomery Ward's proffered authority. *Jones Dairy Farm v. Local No. P-1236,* 755 F.2d 583 (7th Cir.1985) *vacated on other grounds,* 760 F.2d 173 (7th Cir.1985), *cert. denied,* 474 U.S. 845, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985), and *Sears Roebuck and Company v. Teamsters Local Union No. 243,* 683 F.2d 154 (6th Cir.1982) *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983), both involved appeals from the merits of an arbitrator's decision. They are therefore inapposite here where the issue is whether arbitration is available.

Montgomery Ward also relies on *Independent Petroleum Workers v. American Oil Co.,* 324 F.2d 903 (7th Cir.1963) *aff'd mem. by an equally divided Court,* 379 U.S. 130, 85 S.Ct. 271, 13 L.Ed.2d 333 (1964). In that case, the collective bargaining agreement provided for compulsory arbitration of "questions directly involving or arising from ... alleged violations of the terms of this agreement." A separate clause permitted voluntary arbitration of disputes involving matters outside the terms of the agreement, so long as both parties consented. The plaintiff's grievance alleged that the employer's subcontracting violated the agreement's recognition clause. Nonetheless, the court concluded that the compulsory arbitration clause was not applicable because the "recognition clause makes no reference either to arbitration or to the contracting out of work." *Id.* at 906. The court also reasoned that the existence of the voluntary arbitration clause for certain disputes "destroys plaintiff's theory that the mere allegation of contract violation requires arbitration." *Id.* at 907.

We question the compatibility of this result with the directives set forth in *AT & T Tech., Inc. v. Communications Workers* and quoted above. We also question the continuing vitality of this decision in light of recent decisions recognizing the implied limitations on subcontracting arising from other provisions of the contract. *See Dreis & Krump Mfg. v. Intern. Ass'n of Machinists,* 802 F.2d 247, 252-53 (7th Cir.1986); *Edward Hines Lumber Co. v. Lumber & Sawmill Workers,* 764 F.2d 631, 635 (9th Cir.1985) *cert. denied,* 475 U.S. 1131, 106 S.Ct. 1661, 90 L.Ed.2d 203 (1986); *cf. Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180, 185-86 (7th Cir.1985) (implied terms of union contract will be given effect) *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). We therefore follow the lead of *Mobil Oil v. Local 8-766, Oil, Chemical, & Atomic,* 600 F.2d at 328-29, where the court limited the applicability of *Independent Petroleum Workers* to agreements with express provision for voluntary arbitration of certain disputes. It is thus inapposite here.

We conclude that the grievance asserted by Local 710 falls within the terms of the agreement's arbitration clause and therefore grant summary judgment in favor of plaintiff on Count I of its complaint. Accordingly, the parties are ordered to submit the plaintiff's grievance to arbitration in accordance with Article VII of their collective bargaining agreement. Count II requesting a ruling on the contract in the event the dispute is found not to be arbitrable is dismissed as moot.