JONES, District Judge,
dissenting:
As the majority notes, section 2(3) of the National Labor Relations Act exempts supervisors from the definition of “employees” eligible to bargain collectively. 29 U.S.C.A. § 152(3) (West 1973). Section 2(11) defines a supervisor as:
[a]ny individual having authority, in the interest of the, employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection ivith the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
29 U.S.C.A. § 152(11) (West 1973) (emphasis added). Accordingly, to qualify as a “supervisor,” an employee must satisfy three criterion: (1) the employee must actually have the authority to engage in at least one of the twelve delineated activities; (2) the authority must be exercised in the interest of the employer; and (3) exercise of the authority must involve independent judgment and not be merely routine or clerical. Here, the focus of our inquiry is whether the exercise of authority by the licensed practical nurses employed by the appellant satisfies the third criterion. Because I believe it does not, I respectfully dissent.
Section 2(11) was drafted with the specific intent of differentiating between actual management and “straw bosses, lead men, and set-men, and other minor supervisory employees.” NLRB v. Bell Aerospace Co., 416 U.S. 267, 280-81, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974) (quoting Sen. Rep. No. 105, 89th Cong., 1st Sess. 4 (1947)). The Act also addresses the existence of “professional employees,” that is, employees who “engage[ ]in work ... involving the consistent exercise of discretion and judgment in its performance.” 29 U.S.C.A. § 152(12) (West 1973). Specifically, the Act recognizes that despite the fact *346 that such employees consistently exercise discretion and judgment in performing their work, they are nevertheless to be regarded as employees, hot supervisors. Providence Alaska Medical Center v. NLRB, 121 F.3d 548, 554 (9th Cir.1997).
Recognition by the Act’s drafters of the need to address professional employees explicitly speaks to the difficulty frequently encountered in determining when such employees become supervisors. With little effort, one can identify numerous employees in a host of professional fields who regularly make decisions, many of them complex, involving the exercise of their professional judgment, and many of which effect the direction or control of other employees. In such complex circumstances, it is ultimately the degree of discretion exercised by the •individual that controls whether they are an employee or a supervisor. See Beverly Enterprises-Pennsylvania, Inc. v. NLRB, 129 F.3d 1269, 1270 (D.C.Cir.1997). Where an employee’s discretion is substantially constrained by her superiors, exercise of that authority, even where complex decisions are involved, is “routine” and therefore does not constitute an exercise of “independent judgment” under the Act. Id. Determination of whether an employee’s authority is substantially restrained requires that the Board engage in a close scrutiny of the particular facts and circumstances on' a case-by-case basis. See American Fed’n of Television and Radio Artists, Cleveland Local v. Storer Broad., 745 F.2d 392, 899 (6th Cir.1984).
Here, it is undisputed that an LPN’s job affords the LPN discretionary authority over certified nursing assistants employed by Glenmark. However, the record makes clear that the LPNs’ discretionary control of CNAs at both the Cedar Ridge and Point Pleasant facilities is substantially constrained. The decisions made by the LPNs regarding CNAs are limited to set options. The majority of CNAs are given permanent assignments by registered nurses. The remaining CNAs are assigned various work duties by daily work sheets posted by RNs at the beginning of each shift. When CNAs are absent, LPNs can fill the vacancy, but they are required to first request any volunteers, and then to fill the vacancy in accord with CNA seniority. LPNs are also authorized to permit a CNA to leave work early because of an illness or emergency, but the LPN is required to inform the supervising RN of the action. LPNs have no authority to schedule CNAs on a given day or week, nor do they decide whether or when a CNA will be laid off, or can take vacation.
The LPNs’ disciplinary powers are similarly constrained. LPNs can remove a CNA from the presence of a resident only if they suspect the CNA of abusing the resident. An LPN can also instruct a CNA on how to perform a given task, or correct their performance of a task. However, LPNs are not formally involved in the evaluation process of CNAs and LPNs make no decisions regarding the promotion or discharge of CNAs. The LPNs’ only formal disciplinary power consists of issuing a written “verbal correction notice,” which is given to the RNs. The RNs then take whatever steps they deem appropriate, including taking no action. LPNs cannot discharge a CNA, nor can they compel action by an RN on the basis of a written correction notice.
The collective bargaining agreement in place at the Point Pleasant facility further restricts the discretionary authority of LPNs working at that facility. There, seniority governs the procedure for calling in part-time and off-duty full-time CNAs. If a CNA wishes to change shifts or jobs, the contractual bidding procedure dictates. CNA grievances are controlled by the agreement’s grievance procedure which requires that first step grievances be presented to the nursing director, who is authorized to resolve the grievances. As at Cedar Ridge, LPNs can issue written “verbal correction notices,” but they must be reviewed by the nursing director.
The record clearly reflects the Board’s assessment of the LPNs’ roles. As nurses, they make professional judgments regarding the care and treatment of their patients, which frequently require the actions of the CNAs. While the LPNs exercise judgment in making these decisions, it is exactly the type of judgment-making contemplated by section *347 2(12), not the “independent judgment” required by section 2(11).
The majority contends that the Board’s decision is incorrect because it fails to recognize that while the LPNs undoubtedly exercise professional judgment in performing their own duties, they also exercise independent judgment in managing the CNAs. Assuming that such a dichotomy exists, the record makes clear that the LPNs’ discretion with regard to the assignment, discipline and other statutory factors is extremely limited. As the D.C. Circuit noted in Beverly Enterprises-Pennsylvania, 129 F.3d at 1270, considering facts similar to those of the instant case, the LPNs’ discretion “[bjasically ... consists of assigning and monitoring the performance of discrete patient care tasks,” and scheduling CNAs so as to minimize the disruption of that care. Id. This limited authority is so constrained as to render exercise of it routine and therefore devoid of the independent judgment specifically required by the Act.
Despite the limited nature of the LPNs’ authority, Glenmark also advances the proposition, adopted by the majority, that the LPNs must be supervisors because they are often the senior personnel present at the facility, and are appointed as “charge nurses” at those times. Glenmark reasons that the LPNs must be supervisors, since otherwise there would be no one in charge at the facility a substantial portion of the time. Such an argument ignores the plain evidence in the record that although the LPNs are often the senior personnel on duty, there is always an on-call RN who remains ultimately responsible for each facility at all times. The essence of this distinction was well made by the Seventh Circuit in NLRB v. Res-Care, Inc., 705 F.2d 1461 (7th Cir.1983), in which the court observed that “[a] night watchman is not a supervisor just because he is the only person on the premises at night, and if there were several watchmen it would not follow that at least one was a supervisor.”
In sum, the record contains ample facts to sustain the Board’s finding that the LPNs employed by Glenmark at their Point Pleasant and Cedar Ridge facilities do not exercise “independent judgment” in controlling or otherwise directing the CNAs. Therefore, the Board’s decision should be affirmed in accord with the well-established standard that its factual determination regarding the supervisory status of an employee should be overturned only if there is not substantial evidence in the record as a whole to support the finding. See NLRB v. St. Mary’s Home, Inc., 690 F.2d 1062, 1067 (4th Cir.1982).
For the foregoing reasons, I would deny the petition for review and grant the Board’s cross-petition for enforcement.