NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LAUREN MANUFACTURING
COMPANY, Respondent.

Nos. 82–1421, 82–1465.

United States Court of Appeals,
Sixth Circuit.

Argued June 7, 1983.
Decided July 22, 1983.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Daniel Pollitt, Asst. U.S. Atty. (argued), Washington, D.C., for petitioner.

Billy G. DuPree, Thomas Downie, John O'Brien, Jones, Day, Reevis and Pogue, James Rydzel (argued), Cleveland, Ohio, for respondent.

Before MARTIN and JONES, Circuit Judges, and DeMASCIO, District Judge *.

PER CURIAM.

The Board petitions this Court to enforce its order requiring the respondent company to cease and desist from refusing to bargain with the union which represents, *inter alia,* line operators who the company believes to be supervisors and, thereby, excluded from bargaining negotiations under the Act. For the reasons given below, we enforce the Board's order.

Lauren manufactures extruded rubber products at its New Philadelphia, Ohio plant. Production is centered in the extrusion department which includes nine extrusion lines. Each extrusion line is supervised by a line operator who has working under his direction an assistant line operator and line assistants. Each line operator has two persons assigned permanently to his line and other line assistants are assigned on a daily basis depending on the job to be run. As many as six persons may work on the line.

Once the line is ready to run, the line operator gives the line assistants work assignments on the line. One person feeds rubber into the extruder, and the others work at the finished product end of the line coiling and doing whatever else needs to be done, including cleaning around the line. The line operator may also assign his assistant line operator to feed or coil, or he may assign his assistant line operator to do any of the several tasks required of the line operator. Periodically, the line operator alternates the positions of the employees on the line.

In 1979, the United Rubber, Cork, Linoleum & Plastic Workers of America (union) filed a petition for certification of representation seeking recognition as the representative of the production and maintenance employees at Lauren's New Philadelphia, Ohio facility. A representation hearing was held in which one of the primary issues contested at this hearing was whether line operators were supervisors within the meaning of § 2(11) of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* The regional director found that line operators were not supervisors and ordered that an election be held. Although the company requested reconsideration of the status of the line supervisors, it was denied. After the election results were tallied, the union lost.

The union again sought recognition as the representative of Lauren's New Philadelphia production and maintenance employees in early 1981. Pursuant to a petition for certification of representation filed on February 20, 1981, another representation hearing was held on March 3 and 6, 1981 and once more a primary issue was whether line operators were supervisors. The hearing officer received evidence on this issue and incorporated into the record the evidence introduced in the representation hearing held in the 1979 Board case. Relying on its 1979 decision, the regional director held that line operators were not supervisors and directed that an election be held.

An election was conducted by secret ballot on April 29 and 30, 1981. Of the 109 ballots cast, 46 voted for the union, 49 voted against the union and 14 were challenged.

---

* The Honorable Robert E. DeMascio, United States District Court for the Eastern District of Michigan, sitting by designation.

Lauren challenged the ballots of the 14 line operators who were allowed to vote on the ground that they were supervisors under § 2(11) of the Act. However, in a supplemental decision the regional director overruled the challenge to the ballots. The company's request for reconsideration of the supplemental decision was denied. Consequently, the ballots of the line operators were counted, resulting in a revised tally of 56 ballots for and 53 against the union.

Based on the revised tally of ballots, on July 7, 1981 the Board certified the union as the exclusive representative of the employees in the following unit:

> All production and maintenance employees, including regular part-time employees, *line operators* and quality control inspectors employed by the Employer at its facility located at 2228 Reiser Avenue, S.E., New Philadelphia, Ohio, but excluding the scheduler, all office clerical employees and professional employees, guards and supervisors as defined in the Act.

However, the company ignored the union's repeated efforts to bargain collectively and refused to furnish it with information which it requested pertaining to the employees' wages, hours, benefits and classifications. Therefore, the union filed an unfair labor practice charge which resulted in a complaint being issued charging the company with refusing to bargain in violation of § 8(a)(5) and (1) of the Act. In its answer, the company contended that the union had not been properly certified because the bargaining unit contained the line operators, who allegedly are supervisors.

On April 13, 1982, the Board issued its decision and order. The Board concluded that all issues raised by the company in the unfair labor practice proceeding were or could have been litigated in the prior representation proceeding, that the company did not offer to adduce any newly discovered or previously unavailable evidence, and that the company had not alleged any circumstances which would warrant reconsideration of its decision in the representation proceeding. Accordingly, the Board found that the company had violated § 8(a)(5) and (1) of the Act by refusing to bargain collectively with the union and by refusing to furnish the union with requested information. Accordingly, the Board ordered the company to cease and desist from refusing to bargain collectively with the union and from interfering with, restraining, or coercing its employees in the exercise of their § 7 rights.

█ The question of whether individuals should be accorded supervisory status is a mixed question of fact and law. *Beverly Enterprises v. NLRB,* 661 F.2d 1095, 1099 (6th Cir.1981). As such, the Board's determination regarding the supervisory status of the line operators is not to be overturned as long as there is substantial evidence in the record as a whole to support its finding. *NLRB v. Adam & Eve Cosmetics, Inc.,* 567 F.2d 723, 727 (7th Cir.1977). *Accord, Beverly Enterprises v. NLRB,* 661 F.2d at 1099.

Section 2(11) of the National Labor Relations Act provides:

> The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). The kinds of supervisory characteristics enumerated in this section are listed in the disjunctive; therefore, "the exercise of anyone of [them] is enough to make one a supervisor." *NLRB v. Wilson-Crissman Cadillac, Inc.,* 659 F.2d 728, 729 (6th Cir.1981). Additionally, this Court has recognized that regardless of the specific kind of supervisory authority at issue, its exercise "must involve the use of true independent judgment in the employer's interest before such exercise of authority becomes that of a supervisor." *Beverly Enterprises v. NLRB,* 661 F.2d at 1098. *Ac-*

**248**

cord, *NLRB v. City Yellow Cab Co.,* 344 F.2d 575, 580–82 (6th Cir.1965).

■ Congress defined supervisors separately from "employees" because although supervisors can become members of a labor organization, no employer can be compelled to deem supervisors as employees for collective bargaining purposes. 29 U.S.C. § 164(a). This Circuit has emphasized that the mere performance of routine tasks or the giving of instructions to others is not sufficient to afford an individual supervisory status. The true test involves an inquiry into the significance of the individual's judgment which is usually determined by observing whether the individual "identif[ies] with the interests of the employer rather than the employees." *NLRB v. Wilson-Crissman Cadillac, Inc.,* 659 F.2d at 729. Moreover, supervisory status is appropriately accorded those individuals who participate in formulating or determining policies for the employer with regard to labor relations. *Id.*

■ An individual does not become a supervisor merely because he possesses greater skills and job responsibilities than his fellow employees. *Federal Compress & Warehouse Co. v. NLRB,* 398 F.2d 631, 635 (6th Cir.1968). He must exercise independent judgment in performing his responsibilities. Thus, the appropriate inquiry for determining the status of the line operators is whether they possess any *one* of the characteristics enumerated in § 2(11) and whether they exercise independent judgment in performing this function.

■ Upon reviewing the record in this case, we conclude that the line operators are merely leaders, rather than supervisors, because none of the functions they perform require them to exercise independent judgment. Moreover, they do not possess the power to hire, transfer, discharge, reward, promote, discipline or any of the other authorities enumerated in § 2(11) of the Act. We further conclude that although the line operators possess more responsibility than the line assistants, they do not participate in formulating or developing the company policy. Therefore, we find that the Board's

findings and conclusions are supported by substantial evidence in the record as a whole. Accordingly, the Board's order shall be enforced.