**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**FIRST UNION MANAGEMENT, INC., Respondent.**

**No. 84–5987.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 23, 1985.

Decided Nov. 20, 1985.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Howard Perlstein, John Welsh, argued, Washington, D.C., Freder-ick Calatrello, Director, Region 8, N.L.R.B., and Anthony J. Celebrezze, Cleveland, Ohio, for petitioner.

Lee A. Chilcote, Jr., Keith A. Ashmus, Gregory A. Jacobs, argued, Thompson, Hine and Flory, Cleveland, Ohio, for respondent.

Before ENGEL and KENNEDY, Circuit Judges; and COOK,* District Judge.

PER CURIAM.

The National Labor Relations Board ("NLRB") petitions for enforcement of its decision and order, reported at 271 N.L.R.B. No. 163, 117 L.R.R.M. 1344 (1984), requiring respondent First Union Management, Inc. ("First Union") to bargain with the International Union of Operating Engineers, Local Union 589 ("the Union"). The NLRB had previously certified the Union as the exclusive bargaining representative of a unit of First Union's employees.

On February 3, 1983, the Union filed a petition with the NLRB seeking to represent all operating engineers, maintenance employees, maintenance helpers, and painters that First Union employed at two separate office buildings in downtown Cleveland. The NLRB held a representation hearing on February 23 and February 28, 1983. First Union raised three issues regarding the bargaining unit that the Union sought to represent. First, whether employees working at two separate office buildings constituted an appropriate bargaining unit. Second, whether a painter and maintenance mechanic enjoyed a community of interest with the other employees that the Union sought to include in the unit. Third, whether the NLRB should exclude the chief engineers from the bargaining unit as "supervisors." On March 18, 1983, the Regional Director issued a decision finding against First Union on all three issues and directing an election in the unit that the Union sought to represent. First Union filed a timely request for re-

---

* Honorable Julian Abele Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

view of the Regional Director's decision, which the NLRB denied.

On April 15, 1983, the NLRB conducted a secret ballot election which resulted in a vote of seven to five in favor of the Union with First Union challenging the ballot of the maintenance mechanic. First Union filed timely objections to the conduct of the election and to conduct which may have affected the results of the election. First Union complained that in a speech during a meeting of employees held shortly before the election, the Union promised to have an open shop and to waive initiation and other fees if the employees elected the Union as their representative. First Union also complained that an observer badge worn by the Union's observer improperly created the impression that the NLRB favored the Union. The Regional Director overruled First Union's election objections and certified the Union as the collective bargaining representative of the maintenance and engineering employee unit. First Union filed a request for review, which the NLRB denied on July 1, 1983.

In a letter dated May 16, 1983, the Union formally requested that First Union commence contract negotiations and furnish the Union with certain information regarding unit employees. First Union has admittedly denied the Union's request, electing to engage in a technical refusal to bargain to test the validity of the Union's certification. On July 7, 1983, the General Counsel issued a complaint alleging that First Union had committed an unfair labor practice by refusing to bargain with the Union. First Union's amended answer, filed on April 9, 1984, admitted First Union's refusal to bargain but asserted that the NLRB improperly certified an inappropriate bargaining unit. On April 16, 1984, the General Counsel filed a motion for summary judgment contending that First Union sought to relitigate, in the context of an unfair labor practice hearing, issues that First Union raised or could have raised in the prior representation proceeding. The NLRB issued an order transferring the case for its consideration. On August 15, 1984, the NLRB granted the General Coun-

sel's motion for summary judgment finding that First Union's technical refusal to bargain constituted an unfair labor practice and ordering First Union to cease and desist and to bargain with the Union upon request.

On appeal, First Union raises five issues: (1) Whether the NLRB erred in finding that employees from two separate work sites constituted an appropriate bargaining unit; (2) Whether substantial evidence supports the NLRB's finding that painter Edward Henderson and maintenance mechanic Dan Reilly shared a sufficient community of interest to justify their inclusion in the bargaining unit; (3) Whether substantial evidence supports the NLRB's finding that chief engineers John Hughes and Jessie Heresford were not supervisors and therefore eligible to vote in the election; (4) Whether the NLRB abused its discretion in sustaining the Regional Director's refusal to investigate First Union's objection that the Union promised before the election to waive initiation and other fees if the employees selected the Union to represent them; and (5) Whether the NLRB abused its discretion overruling First Union's objection regarding the observer badges worn by union and company representatives during the election. For the reasons set forth below, we enforce the NLRB's order.

**I.**

■ First Union contends that the NLRB certified an inappropriate bargaining unit because the Union sought to represent a bargaining unit that included employees located at two Cleveland office buildings, 601 Rockwell Avenue ("Rockwell") and 55 Public Square ("Public Square"), that First Union managed. The selection of an appropriate bargaining unit rests within the NLRB's sound discretion. In *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947), the Supreme Court stated:

The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute,

and none should be by decision. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed.

*See also South Prairie Construction Co. v. Local 627, International Union of Operating Engineers,* 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976). Accordingly, "this [C]ourt's review of such a decision is 'exceedingly narrow.'" *NLRB v. American Seaway Foods, Inc.,* 702 F.2d 630, 632 (6th Cir.1983). Furthermore, we consider only whether the NLRB selected *an* appropriate bargaining unit rather than *the* most appropriate unit. *NLRB v. Fuelgas Co., Inc.,* 674 F.2d 529, 530 (6th Cir.1982).

■ The NLRB considers several factors, including the existence of common supervision and centralized control over labor relations, close geographic proximity, relevant bargaining history, similarities in employee functions and working conditions, and employee interchange in determining whether the employees in question share a sufficient community of interest to justify a multi-site bargaining unit. *Point Pleasant Foodland,* 269 N.L.R.B. No. 69, 115 L.R.R.M. 1238, 1239 (1984). *Accord Meijer, Inc. v. NLRB,* 564 F.2d 737, 740 (6th Cir.1977). We hold that the NLRB did not abuse its discretion in concluding that the maintenance and engineering employees at the two Cleveland office buildings share a sufficient community of interest to constitute an appropriate bargaining unit.

■ The administrative record contains substantial evidence that Maintenance Superintendent John Krajny and his immediate superior, Ralph Harper, jointly supervise the maintenance and engineering employees at both locations. This joint supervision indicates common supervision and centralized control of labor relations in the two office buildings so that the employees share the common interests necessary to comprise an appropriate unit. *See, e.g., Seligman & Associates, Inc. v. NLRB,* 639 F.2d 307, 308–09 (6th Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 120

(1981). Additionally, only 500 yards separate the two office buildings in downtown Cleveland. Close geographic proximity supports the appropriateness of a two-site unit. *See, e.g., NLRB v. Fuelgas Co., Inc., supra* at 531 (two offices "only 14 miles apart" and under the control of a single manager constitute an appropriate unit); *Detroit Plastic Molding Co. v. NLRB,* 595 F.2d 1320, 1321 (6th Cir.1979) (two nearby, closely related plants constitute an appropriate unit). Furthermore, all employees within the two-site bargaining unit have similar functions and working conditions. Although the two buildings have different types of heating and air conditioning systems, the engineers at both buildings operate and maintain the respective heating, ventilating, and air conditioning units, while the maintenance employees perform the remaining work, including minor plumbing and electrical repairs. First Union pays all employees similar wages on an hourly basis using punch time clocks, gives similar fringe benefits, vacations, and holidays, and utilizes the same job classifications and absence reporting systems for both buildings. Similarity in skills, duties, and working conditions indicate community of interests among employees. *NLRB v. American Seaway Foods, Inc., supra* at 633. The administrative record does indicate some interchange among bargaining unit employees between the two buildings. Although the bargaining history of the two buildings shows that a union formerly represented the Public Square building workers while the Rockwell building workers had not previously unionized, the bargaining history does not outweigh the community of interests from common supervision, geographic proximity, and similar functions and working conditions. Consequently, we hold that the NLRB did not abuse its discretion in certifying the two-site bargaining unit.

■ First Union argues that the NLRB ignored a long-standing doctrine that treats single-site units as presumptively appropriate. *See, e.g., NLRB v. Forest City Enterprises, Inc.,* 663 F.2d 34, 35 (6th Cir.1981);

*Dixie Belle Mills, Inc.*, 139 N.L.R.B. No. 61, 51 L.R.R.M. 1344, 1345 (1962). The presumption, however, only tends to establish that a single-site unit, when requested, constitutes *an* appropriate unit. The presumption does not affect this case because we only face the question whether the bargaining unit that the Union sought and the NLRB certified constituted an appropriate unit. As previously discussed, we conclude that the two-site unit was an appropriate unit.

## II.

■ First Union argues that painter Edward Henderson and garage maintenance employee Dan Reilly do not possess a sufficient community of interest with the other maintenance employees for the NLRB to include Henderson and Reilly in the bargaining unit. We hold, however, that the NLRB did not abuse its discretion in including the two in the bargaining unit. John Krajny and Ralph Harper also supervise both Henderson and Reilly. Henderson, whose duties include painting, plastering and wallpapering, divides his time equally between the two office buildings. Although Henderson normally works alone, he often receives assistance from other maintenance employees. Reilly is primarily responsible for maintaining the garages attached to the two office buildings, plus two other facilities that First Union owned. Other maintenance employees, including maintenance mechanic Jim Collier, who works as garage attendant when Reilly goes on vacation, often assist Reilly. First Union pays both Henderson and Reilly on an hourly basis and they receive similar benefits as the other employees in the bargaining unit.

We hold that Henderson and Reilly share a sufficient community of interest with the maintenance and engineering employees to allow the NLRB to include them in the bargaining unit. Consequently, the NLRB did not abuse its discretion in including Henderson and Reilly within the bargaining unit. Furthermore, the inclusion of Henderson and Reilly within the bargain-

ing unit eliminated the possibility of leaving "some employees under union rules and others working beside them on their own." *NLRB v. Lou de Young's Market Basket, Inc.*, 406 F.2d 17, 24 (6th Cir.), *remanded on other grounds*, 395 U.S. 828, 89 S.Ct. 2125, 23 L.Ed.2d 737 (1969).

## III.

First Union additionally argues that chief engineers John Hughes and Jessie Heresford are supervisors and that the NLRB should have excluded them from the bargaining unit. Title 29 U.S.C. § 152(3) excludes from the definition of the term "employee" "any individual employed as a supervisor." Title 29 U.S.C. § 152(11) defines the word "supervisor" as:

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

Under 29 U.S.C. § 164(a), the NLRB cannot require an employer to bargain about the working conditions of supervisors. Although 29 U.S.C. § 152(11) enumerates the various supervisory powers disjunctively, supervisory authority requires "the use of true independent judgment in the employer's interest." *Beverly Enterprises v. NLRB*, 661 F.2d 1095, 1099 (6th Cir.1981). "[T]he mere fact that an employee may give some instructions to others ... does not indicate that he must identify with the interest of the employer rather than the employees; the test must be the significance of his judgments and directions." *NLRB v. Wilson-Crissman Cadillac, Inc.*, 659 F.2d 728, 729 (6th Cir.1981).

■ Substantial evidence supports the NLRB's conclusion that Hughes and Heresford are not supervisors. First Union appointed Hughes and Heresford chief engineers because of their seniority and

engineering expertise. An employee does not become a supervisor merely because the employee possesses greater skills and responsibilities than other employees. *NLRB v. Lauren Manufacturing Co.*, 712 F.2d 245, 248 (6th Cir.1983). Neither Heresford nor Hughes hires, fires, suspends, lays off or recalls fellow employees or maintenance workers, nor do they have the authority to effectively recommend such action. Instead, Krajny and Harper exclusively exercise such supervisory authority. The administrative record also indicates that Hughes and Heresford lack independent supervisory authority to discipline, reward, promote, transfer, schedule working hours or vacations, grant overtime or sick leave, adjust grievances, or set pay rates. Again, Krajny and Harper exercise those supervisory powers alone. While Hughes and Heresford assign workers, they do not make assignments in a supervisory capacity but rather serve as lead men. Hughes, himself, testified that he considers himself a lead mechanic and not a supervisor. The routine assignment of tasks to others does not elevate an employee to supervisory status. *Id.* Finally, First Union pays Hughes and Heresford by the hour and they spend most of their time working with their tools alongside their fellow engineers. Accordingly, the NLRB did not abuse its discretion by including Hughes and Heresford in the bargaining unit.

## IV.

Respondent next maintains that the NLRB abused its discretion in deciding that the Regional Director properly refused to conduct an investigation of First Union's election objection that the Union promised to waive initiation and other fees and to maintain an open shop if the employees elected the Union their representative. In *NLRB v. Dean Foods Company, Inc.*, 421 F.2d 664 (6th Cir.), *cert. denied*, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271, *reh'g denied* 399 U.S. 937, 90 S.Ct. 2239, 26 L.Ed.2d 809 (1970), this Court stated that the relevant question is whether "the Board acted arbitrarily, capriciously, and abused the discretion delegated to it [in overruling the Company's election objections]."

First Union's election objection that the Union promised to waive initiation and other fees did not constitute a basis on which the NLRB could set aside the election. In *NLRB v. Savair Manufacturing Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973), the Supreme Court held that a labor union's offer to waive initiation fees for all employees who signed union authorization cards *before the representation election* and withhold such waivers from employees who did not sign such cards interfered with the employees' right to refrain from union activities. *Savair*, however, does not apply to across-the-board waivers to all employees regardless of pre-election union support. *See NLRB v. S & S Product Engineering Services, Inc.*, 513 F.2d 1311, 1312 (6th Cir.1975). Consequently, the NLRB did not err in concluding that First Union did not allege a *Savair* violation.

Nor does the allegation that the Union promised an open shop constitute grounds for setting aside an election. First Union apparently alleges a material misrepresentation of fact. The NLRB, however, does not probe into the truth or falsity of a party's campaign statements and will not set elections aside on the basis of misleading campaign statements. *Midland National Life Insurance Co.*, 263 N.L.R.B. No. 24, 110 L.R.R.M. 1489, 1494 (1982). *See also NLRB v. Michigan Rubber Products, Inc.*, 738 F.2d 111, 116 (6th Cir.1984). Consequently, we hold that the NLRB did not abuse its discretion in failing to investigate First Union's objection that the Union promised to waive initiation and other fees and to maintain an open shop.

## V.

Finally, First Union argues that the NLRB's agent at the election compromised the NLRB's neutrality by permitting the Union's election observer to wear an observer badge different from the badge

that First Union's election observer wore. The only difference between the badges was that prior to the election the word "employer" had been typewritten on the badge worn by First Union's election observer while the word "union" had been hand printed in larger letters on the badge that the Union's election observer wore. First Union did not object to the badges prior to the time that the polls opened. We will not lightly set aside the results of a NLRB-supervised representation election. *See, e.g., NLRB v. Basic Wire Products, Inc.,* 516 F.2d 261, 263 (6th Cir.1975). Given the trivial difference in the badges and the fact that First Union did not object to the badges before the election began, we hold that the NLRB did not abuse its discretion in overruling First Union's objection on this matter.

Accordingly, we enforce the NLRB order requiring First Union to bargain with the Union.