NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CHILD WORLD, INC. d/b/a Children's
Palace, Respondent.

No. 86–5392.

United States Court of Appeals,
Sixth Circuit.

Argued March 10, 1987.

Decided May 1, 1987.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Peter Winkler, Beverly Oyama (argued), for petitioner.

Andrew C. Meyer (argued), Durvin, Flinker and Chan, Cleveland, Ohio, Martin T. Wymer, for respondent.

Before ENGEL, KRUPANSKY and GUY, Circuit Judges.

KRUPANSKY, Circuit Judge.

Petitioner National Labor Relations Board (NLRB or Board) sought enforce-

ment of its order directing respondent Child World, Inc. (Children's Palace or Respondent) to bargain with the United Food and Commercial Workers Union Local 1099 (Union), the certified bargaining representative for employees of Respondent's Miamisburg, Ohio (South Dayton) retail store.

The record disclosed the following facts. Respondent, a Massachusetts corporation headquartered in Avon, Massachusetts, operated 104 retail toy stores nationwide. Its operations were divided into three regions, each with approximately 35 retail outlets. Each region was subdivided into several districts with approximately seven to ten stores. A "regional manager" was assigned to each of the three regions, and a "district manager" was assigned to each district. Each store in turn had a manager, two assistant managers, and five department managers, one for each of the store's five departments: wheelgoods, toys, electronics, juvenile and warehouse. Children's Palace operated two stores in the Dayton, Ohio area, one located in North Dayton and one situated in Miamisburg, which was known as the "South Dayton" store.

On April 11, 1985, the Union filed a petition with the NLRB seeking certification as the exclusive bargaining representative for all of the full-time and part-time employees at the South Dayton store. Children's Palace entered two objections to the petition, the first of which charged that the petition should have been directed to both Dayton stores and the second of which asserted that the bargaining unit improperly included department managers who were, the respondent contended, "supervisors" under 29 U.S.C. § 152(11) [1] and, therefore, excluded from the definition of "employees" un-

der the National Labor Relations Act (Act). 29 U.S.C. § 152(3).

On June 18, 1985, subsequent to a hearing, the NLRB's Regional Director issued his Decision and Direction of Election in which he concluded that the single store bargaining unit was appropriate and that department managers were not supervisors within the meaning of the Act.

Thereafter, on July 19, 1985, the Board conducted a secret ballot election in which the Union received 15 affirmative votes against 8 negative votes. Children's Palace filed timely objections alleging that department managers were not "employees" within the meaning of the Act and that the Union improperly interfered with the employees' free choice. On August 15, 1985, the Regional Director overruled both objections and certified the Union as the exclusive bargaining representative for the South Dayton store. Children's Palace sought review by the National Labor Relations Board, which was denied on October 7, 1985 with the finding that the case involved no substantial issues.

Children's Palace refused thereafter to bargain with the Union which resulted in the filing of an unfair labor practice charge. The Regional Director issued a complaint alleging that Children's Palace had failed to recognize and bargain with the Union in violation of 29 U.S.C. § 158(a)(1) and (5). [2] Children's Palace responded by reasserting its initial objections to the union's petition seeking certification. The NLRB's General Counsel moved for summary judgment, which the Board granted on January 31, 1986 upon concluding that the issues joined by the pleadings had been litigated in the certification proceeding, and that Respondent had neither

---

1. 29 U.S.C. § 152(11) provides:

   (11) The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

2. 29 U.S.C. § 158(a)(1) and (5) provide:

   (a) It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

   \*    \*    \*    \*    \*    \*

   (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

presented new evidence nor shown cause for the Board to reconsider its prior decision. The NLRB thereupon ordered Children's Palace to cease and desist from refusing to recognize and bargain with the Union and to post an appropriate remedial notice. 278 NLRB No. 39. Children's Palace refused, and the NLRB instituted this action to enforce its order.

In its brief before this court, Children's Palace has reasserted as assignments of error and as defenses to the Board's action to enforce its order, its arguments that the single store bargaining unit was inappropriate and that department managers were erroneously included within the unit. Upon consideration of the briefs and oral arguments of counsel together with the record herein, this court concludes that these assignments of error are not well taken, that the Board's findings were supported by substantial evidence, and that its decision did not constitute an abuse of discretion.

The NLRB's designation of an appropriate bargaining unit "involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed." *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040 (1947).

> The selection of an appropriate bargaining unit rests within the NLRB's sound discretion. * * * Accordingly, "this [c]ourt's review of such a decision is 'exceedingly narrow.'" Furthermore, we consider only whether the NLRB selected *an* appropriate unit rather than *the* most appropriate unit.

*NLRB v. First Union Management, Inc.*, 777 F.2d 330, 332–33 (6th Cir.1985) (per curiam) (citations omitted). "[T]he Board has operated under a presumption that a single location in a multiple location business is an appropriate bargaining unit and this presumption has been recognized by this circuit." *Wyandotte Savings Bank v. NLRB*, 682 F.2d 119, 120 (6th Cir.1982) (per curiam) (citations omitted).

> To justify its refusal [to bargain with the union], the Company must establish that the Board abused its discretion in designating the bargaining unit; and where

the Board designates a single store bargaining unit, the Company has the additional burden of rebutting a presumption in favor of the designation.

*NLRB v. Forest City Enters.*, 663 F.2d 34, 35 (6th Cir.1981) (per curiam).

> The cases reflect that the major considerations in determining an appropriate bargaining unit in relation to a multi-unit company are prior bargaining relationship, distance of the unit from the central office, whether or not employees are interchangeable with other units, the relative autonomy, or lack thereof, of the individual unit, and the extent to which the management of the individual unit can and must deal with the day-to-day issues of the bargaining relationship.

*Meijer, Inc. v. NLRB*, 564 F.2d 737, 740 (6th Cir.1977).

■ The NLRB's determination that the employees of the South Dayton store constituted an appropriate bargaining unit was not an abuse of discretion when considered within the above defined criteria. The record disclosed that although the retail chain's operations were highly centralized nationwide, the store managers were "more closely involved in the employees' daily work than [were] central office personnel." *B. Siegel Co. v. NLRB*, 670 F.2d 64, 66 (6th Cir.1982) (per curiam). The store managers determined employee work schedules. They hired new employees, and were restrained only by company-wide budgetary constraints. They effectively recommended disciplinary action, although such action was ultimately administered by the district and regional managers. The store managers evaluated employees and recommended wage increases, which were routinely approved subject to company-wide ceilings. The district manager reviewed each store's operation only on a weekly basis. Finally, there was no history of unified collective bargaining for the two stores, and no union sought to represent employees of both stores.

■ Children's Palace also argued that the five department managers were improperly included within the unit because they were "supervisors" under the Act.

The question of whether individuals should be accorded supervisory status is a mixed question of fact and law. As such, the Board's determination regarding the supervisory status of the line operators is not to be overturned as long as there is substantial evidence in the record as a whole to support its finding. *NLRB v. Lauren Mfg. Co.*, 712 F.2d 245, 247 (6th Cir.1983) (per curiam) (citations omitted). "The exercise of any one of the enumerated powers [contained in § 2(11) of the Act] combined with 'independent judgment' is enough to make one a supervisor." *NLRB v. Wilson-Crissman Cadillac, Inc.*, 659 F.2d 728, 729–30 (6th Cir.1981) (per curiam) (citations omitted). "[S]upervisory status 'does not require the exercise of power described for all or any definite part of the employee's time.' " *NLRB v. Medina County Publications, Inc.*, 735 F.2d 199, 201 (6th Cir.1984) (per curiam).

This Circuit has emphasized that the mere performance of routine tasks or the giving of instructions to others is not sufficient to afford an individual supervisory status. The true test involves an inquiry into the significance of the individual's judgment which is usually determined by observing whether the individual "identif[ies] with the interests of the employer rather than the employees." *Lauren Mfg. Co.*, 712 F.2d at 248. Thus, an individual does not become a supervisor merely because he possesses greater skills

and job responsibilities than other employees, but he must exercise independent judgment in performing those responsibilities. *Id.*

The NLRB's determination that the department managers were not supervisors was supported by substantial evidence. They dressed the same as other employees, except for name tags, and performed the exact same tasks as other employees during 90% of their working hours. They had no control over the inventory or its display, because they followed the corporation's "planagram" which directed the location and manner in which merchandise was to be displayed. They were not involved in hiring employees, and did not possess the authority to discipline or discharge employees.[3] They did not participate in the formal evaluation of employees or recommend wage increases. Department Managers had no control over employee work schedules. Although department managers were paid at a higher rate than other employees, they were, unlike other supervisory personnel, paid on an hourly basis, were required to punch a time clock, received overtime pay for hours in excess of a 40–hour week, and did not receive bonuses. Their benefits, including vacation, sick leave, and health and life insurance, were identical to those of other employees.

For the foregoing reasons, the Board's order of January 31, 1986 is hereby ENFORCED.

---

**3.** Respondent directs this court's attention to a portion of the record which discloses that on one occasion, a department manager requested the store manager to remove an employee from her department because the employee was not performing his work properly. The store and district managers investigated and directed the department manager to compile a list of tasks for the employee to perform. The department manager did so, and later reported that the employee had not completed the listed assignments. The employee was then discharged by the district manager. The respondent relies upon *Medina County Publications, supra,* for the proposition that the *existence* of such authority and not the frequency of its exercise is controlling in making the determination of whether an employee is a supervisor. In *Medina,* the sports editor for the publication, *on one occasion* effectively recommended, *without further investigation by higher level management,* that an employee not receive a full day's pay because the

work he was performing should have been completed earlier. This court found that he was a supervisor, and that the Board erred in concluding otherwise simply because he infrequently exercised the power to discipline employees. However, the sports editor in that case had other powers as well, including overseeing the preparation of the sports page, creating work assignments, allocating work assignments, and editing other employees' work.

In the present case, the department manager's request that the delinquent employee be removed from her department was not acted upon without further investigation by the store and district managers. Furthermore, the department managers did not possess other job responsibilities like those of the sports editor in *Medina* which would indicate that they "identify with the interests of the employer rather than the employees ..." *Wilson-Crissman Cadillac,* 659 F.2d at 730.