923 F.2d 855
 136 L.R.R.M. (BNA) 2272
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
VENTURE PACKAGING, INC., Respondent,
Glass, Molders, Pottery, Plastics & Allied Workers
International Union, Intervenor.
 No. 90-5087.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1991.
 
 Before KEITH, MILBURN and SUHRHEINRICH, Circuit Judges.
 PER CURIAM:
 
 
 1
 The National Labor Relations Board ("Board") petitions for enforcement of its May 31, 1989 decision and order finding Venture Packaging Incorporated ("Venture" or "Company") guilty of unfair labor practices and directing it to bargain with the Glass, Moulders, Pottery, Plastics and Allied Workers International Union ("Union"). The Union has intervened in support of the Board's petition. For the reasons set forth below, we enforce the Board's decision and order.
 
 I.
 
 2
 On March 13, 1986, the Union filed a representation petition seeking to represent all the Company's hourly employees, including maintenance and training foremen. The Company objected to the inclusion of maintenance and training foremen in the unit, contending that they were supervisors within the meaning of section 2(11) of the National Labor Relations Act ("Act"). The Regional Director ordered a hearing on the issue of the maintenance and training foremen's status which revealed that in addition to general, or, lead foremen, there are maintenance and training foremen. Training foremen are on probationary status prior to appointment as maintenance foremen. Accordingly, on April 21, 1986, the Regional Director issued a Decision and Direction of Election finding that the maintenance and training foremen were not statutory supervisors and that their inclusion in the unit was appropriate.
 
 
 3
 On May 22 and 23, 1986, the Company's employees selected the Union as their collective bargaining representative in a Board-conducted representation election. The Company filed post-election objections to the election and the eventual certification of the Union, contending that its maintenance and training foremen were supervisors within the meaning of the Act. The Company argued that the Board erred in allowing the maintenance and training foremen to be included in the bargaining unit because of their supervisory status. On June 27, 1986, the Regional Director overruled the Company's objections. Accordingly, he issued a certification to the Union. The Company then filed a request for review of the Regional Director's supplemental decision and certification. On August 8, the Board denied the request for review.
 
 
 4
 While the Board was still considering the Company's challenge to the Union's certification, the Company began altering the employees' terms and conditions of employment without notifying or offering to bargain with the Union. In June of 1986, the Company implemented a mandatory overtime procedure, altered the work hours of the printing department, began to strictly monitor work breaks, eliminated short term disability, paid maternity leave benefits and personal days off. The Company also modified disciplinary procedures to include automatic discharge, reclassified employees as foremen or quality control inspectors without any substantial change in the employees' duties. In addition, employees were involuntarily transferred to different shifts. The Company also failed to grant a wage increase in July 1986, contrary to its customary practice of granting such an increase every July. Company President Rathbun ("Rathbun") issued repeated threats to employees regarding potential consequences should the Union become certified, and during an August 1986 meeting, indicated that he would rather lock the doors and let the bank take over than pay fines for the unfair labor practice charges.
 
 
 5
 The Company constructively discharged maintenance foreperson Carlene Fluty ("Fluty"), a member of the in-plant unionization committee, because she was unable to accommodate the new shift she had been scheduled for, pursuant to the aforementioned shift transfers. She was unable to work during the assigned shift because of child care constraints. She informed the Company general manager Wilson ("Wilson") of this and was told that he wanted to separate her from two other employees who also were members of the unionization committee. When Fluty did not appear for work on the date she was scheduled to begin the third shift, Rathbun warned her that he considered that an unexcused absence and that if it happened once more, she would be terminated. Fluty then declared that she "quit" and did not thereafter return to work.
 
 
 6
 The Union filed appropriate unfair labor practice charges. The matter was tried before Administrative Law Judge ("ALJ") Goerlich. ALJ Goerlich found that the Company violated section 8(a)(1), (3) and (5) of the Act, 29 U.S.C. Secs. 158(a)(1), (3) and (5) by unilaterally implementing the foregoing changes in the terms and conditions of employment. ALJ Goerlich also found that the Company violated section 8(a)(1) of the Act, 29 U.S.C. Sec. 158(a)(1) by threatening that an employee selection of the Union would be an "exercise in futility" and that the Company would shut down. Finally, ALJ Goerlich found that the Company violated section 8(a)(1) and (3) of the Act, 29 U.S.C. Secs. 158(a)(1), and (3) by constructively discharging Fluty pursuant to an unlawful change in her work schedule, motivated by anti-union animus.
 
 
 7
 While the above proceeding was pending, the Company made an additional unilateral change in the employees' terms and conditions of employment. In December 1986, the Company did not grant Christmas bonuses as it had from 1982 through 1985. The Christmas bonus was awarded to employees with more than 30 days employment according to the following formula: in the first year of employment, employees receive $10 for every month of employment; in the second year of employment, employees receive $120; in the third year and thereafter, employees receive $180. In July 1987, the Company failed to grant the customary across the board wage increase to employees. On March 23, 1987, the Union sent a letter to the Company requesting the names, addresses and telephone numbers of unit employees. The letter requested that the information be forwarded by April 1, 1987. The Company did not respond to the request.
 
 
 8
 The Union then filed additional unfair labor practice charges, which were tried before ALJ Roth. ALJ Roth found that the Company violated section 8(a)(1) and (5) of the Act 29 U.S.C. Secs. 158(a)(1)(5) by refusing to furnish the Union with information necessary to its bargaining functions and by failing to grant a Christmas bonus in December of 1986, and by failing to grant a wage increase in July 1987.
 
 
 9
 The Board consolidated review of the decisions of both ALJs, noting that they covered an identical issue, allegations of continuing unlawful unilateral acts of the Company. On May 31, 1989, the Board affirmed both ALJ Guerlich's and ALJ Roth's findings of fact, conclusions of law and rulings. The Board's order requires the Company to cease and desist from interfering with employees' rights under section 7 of the Act, 29 U.S.C. Sec. 157. The order further requires that the Company bargain with the Union as the representative of the Company employees. The Company must also rescind all of the policies it unilaterally implemented from July 1986 to the present time. Fluty is to be reinstated with full back pay. The order specifically directs the Company to remove any reference to the incident from her file and to notify her in writing that it will not be used against her in any way in the future.
 
 
 10
 The Board's decision and order specifically notes that the company's assertions of economic losses, even if credited, do not constitute "compelling economic considerations" which would excuse the Company from failing to bargain with the Union over the unlawful, unilateral changes in the terms and conditions of employment. Joint Appendix at 92 (Decision and Order of the NLRB, May 31, 1989).
 
 
 11
 On January 18, 1990, the Board filed a timely application for enforcement of its May 31, 1989 order.
 
 II.
 
 12
 The scope of our review of the Board's findings is limited to determining whether the findings are supported by substantial evidence on the record as a whole. 29 U.S.C. Sec. 160(e), (f); Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). "Whether on the record as a whole there is substantial evidence to support [the Board's] findings is a question which Congress has placed in the keeping of the Courts of Appeals." Id. at 491. "The Board's application of the law to the facts is also reviewed under the substantial evidence standard, and the Board's reasonable inferences may not be displaced on review even though the court might justifiably have reached a different conclusion had the matter been before it de novo." Turnbull Cone Baking Co. v. NLRB, 778 F.2d 292, 295 (6th Cir.1985) (citing NLRB v. United Ins. Co., 390 U.S. 254, 260 (1968); Universal Camera 340 U.S. at 488 (1951)), cert. denied, 476 U.S. 1159 (1986). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Universal Camera, 340 U.S. at 477. Where the Board's orders have "no reasonable basis in law", such orders will not be enforced. Ford Motor Co. v. NLRB, 441 U.S. 488, 497 (1979).
 
 III.
 
 13
 The Board argues that its findings and conclusions were supported by substantial evidence on the record as a whole. The Company argues that the following findings were not supported by substantial evidence on the record as a whole: the maintenance and training foremen were not supervisors; the Company violated Secs. 8(a)(1) and (3) of the Act; the Company violated Secs. 8(a)(1) and (5) of the Act; Carlene Fluty was constructively discharged in violation of Sec. 8(a)(3) of the Act. The Company also contends that the Board's finding of anti-union animus was incorrect. The Company defends its actions as motivated by exigent financial circumstances. We find the Board's findings and conclusions to be supported by substantial evidence.
 
 A.
 
 14
 The Company argues that the Regional Director's determination that maintenance and training forepersons are not supervisors within the meaning of Sec. 2(11) of the Act, 29 U.S.C. Sec. 152(11), is not supported by substantial evidence on the record as a whole. Further, the Company argues that the statutory indicia, by "settled construction" in this circuit, are "disjunctive" and that the possession of any one of the enumerated authorities places the employee invested with such authority in the supervisory category. This contention is based on language in the statute which, according to the Company, indicates that employees who have the authority to responsibly direct and discipline other employees are clothed with supervisory authority. The Board argues that this determination of non supervisory status is indeed supported by substantial evidence. We agree with the Board.
 
 
 15
 Section 2(11) of the Act, 29 U.S.C. Sec. 152(11), specifically enumerates the indicia for making this determination of supervisory status:
 
 
 16
 The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment. (emphasis added).
 
 
 17
 Id. It is well settled that the exercise of routine or clerical authority does not elevate an individual to the status of supervisor. NLRB v. Child-World, Inc., 817 F.2d 1251, 1254 (6th Cir.1987); NLRB v. Lauren Manufacturing Co., 712 F.2d 245, 247-48 (6th Cir.1983) Similarly, an employee does not become a supervisor if his or her participation in personnel actions is limited to a reporting function and does not amount to an effective recommendation that retention, reward, or discipline be given. Beverly Enterprises v. NLRB, 661 F.2d 1095, 1100 (6th Cir.1981). Further, because of the Board's expertise in resolving disputes concerning supervisory status, absent an abuse of discretion, its determination on this matter will not be disturbed. Williamson Piggly Wiggly, Inc. v. NLRB, 827 F.2d 1098, 1100 (6th Cir.1987).
 
 
 18
 As found by the Regional Director and the Board, maintenance and training foremen monitor the production equipment and are authorized to shut down malfunctioning equipment. In the event of a shut down, the maintenance and training foremen may advise the packer assigned to the machine to perform light cleaning chores. In addition to their duties related to equipment performance, the maintenance and training foremen answer the telephones and record employees' explanations as to why they will be late or absent on absence report forms. The maintenance and training foremen will mark the appropriate box on the form as to whether the excuse falls into the excused or unexcused category, as prescribed by Company policy. Where a matter does not fall into either category, they will refer the matter to the general or lead foremen. The absence reports are then forwarded to the personnel department where the relevant information is entered into employee files. The personnel department is responsible for issuing disciplinary warnings if warranted.
 
 
 19
 None of the foregoing characteristics and duties resembles the exercise of authority approximating that contemplated by the statute. In NLRB v. First Union Management, Inc., 777 F.2d 330, 335 (6th Cir.1985), we held that "[t]he routine assignment of tasks to others does not elevate an employee to supervisory status." The test of supervisory authority is, rather, the significance of judgments and directions. NLRB v. Wilson-Crissman Cadillac, Inc., 659 F.2d 728, 729 (6th Cir.1981). Thus, we find that the Board's determination that the maintenance and training foremen are not supervisors is supported by substantial evidence. Further, the Board correctly determined that the maintenance and training forepersons have no authority in the areas of hiring, disciplining, or promoting other employees or recommending such actions. Therefore, the maintenance and training forepersons were properly included in the bargaining unit as non supervisory employees.
 
 B.
 
 20
 The Company next argues that, contemporaneous with the Union campaign and election, it encountered severe financial and production problems. The Company argues that its actions, which subsequently formed the basis for the unfair labor practice charges, were necessitated by exigent financial circumstances. These actions, the Company argues, were not motivated by anti-union animus. Relying on Mike O'Connor Chevrolet, 209 N.L.R.B. 701, 703 (1974) and N.L.R.B. v. Katz, 369 U.S. 736, 747-48 (1962) (stating that there might be circumstances which the Board could or should accept as excusing or justifying unilateral action), the Company submits that the exigent financial circumstances it experienced excused it from bargaining with the Union over the unilateral changes it implemented from June 1986 onward. The Company argues further that the Board erred in its application, or lack thereof, of the motive test enunciated in Wright Line, Inc., 251 N.L.R.B. 1083 (1980), enf'd. as modified, 662 F.2d 899 (1st Cir.1981), cert. denied, 455 U.S. 989 (1982); see also NLRB v. Consolidated Freightways Corp., 651 F.2d 436, 437 (6th Cir.1981). The Board argues that its findings of unfair labor practices, the non-existence of compelling economic considerations, as well as the motivation of anti-union animus on the part of the Company are supported by substantial evidence on the record as a whole. We find the Board's argument persuasive.
 
 
 21
 In evaluating the question of an employer's motive in implementing unilateral changes, the Board has formulated a test whereby the General Counsel must first establish a prima facie showing sufficient to support the inference that protected conduct was a motivating factor in the employer's decision to take the allegedly unlawful action. If such a showing is made, the Board must evaluate whether the Employer met its burden of showing that it would have taken the same action even in the absence of the protected conduct. Wright Line, 251 N.L.R.B. at 251.
 
 
 22
 We find that the Board's finding in the instant case, that the unilateral changes were motivated by the Company's anti-union animus, particularly on the part of Rathbun, is supported by substantial evidence on the record as a whole. In addition, the timing between the election of the Union and the implementation of the new employment policies is so close as to establish a prima facie case of anti-union motivation. NLRB v. Transp. Management Corp., 462 U.S. 393, 404-05 (1983). The Company's compelling economic consideration argument does not lead us to the conclusion that the Board erred in its application of the Wright Line test; there is no evidence that the Company would have taken the same steps to change the terms and conditions of employment absent the protected activity engaged in by its employees.
 
 
 23
 In Mike O'Connor, the Board stated that "absent compelling economic considerations for doing so, an employer acts at its peril in making changes in terms and conditions of employment during the period that objections to an election are pending and the final determination has not yet been made." Mike O'Connor, 209 N.L.R.B. at 703. See also Van Dorn Plastic Machinery Co. v. NLRB, 881 F.2d 302, 307-08 (6th Cir.1989) (finding substantial evidence supported the Board's conclusion that employer failed to demonstrate that it eliminated the "paid lunch" policy due to compelling economic considerations, thus mitigating employer's duty to bargain).
 
 
 24
 In this case, the Company has not demonstrated that compelling economic considerations precluded bargaining with the Union prior to implementing the post election, pre-certification unilateral changes. As the Supreme Court noted in NLRB v. Katz, 369 U.S. at 736, 747 (1962), unilateral actions "will rarely be justified by any reason of substance." The election occurred on May 22 and 23, 1986. The Company instituted its unilateral changes soon thereafter in June 1986, clearly in response to the employees' protected activity. Accordingly, we uphold the Board's determination that there existed no compelling economic considerations which precluded the Company from bargaining with the Union over the changes that took place in areas of mandatory bargaining.
 
 IV.
 
 25
 For the foregoing reasons, we AFFIRM the Board's determinations and ENFORCE the Board's order.